JESSE A. ANSLEY, plaintiff in error vs. E. J. STARR, enrolling officer defendant, in error.

[1.] Since the passage of the Act of Congress to put an end to the exemption of those from the military service who had furnished substitutes, approved 5th January 1864, one is not entitled to a discharge from the custody of the enrolling officer, by reason of having furnished a substitute.

[2.] A, within the conscript age, and while exempt by reason of his having a substitute in, became a member of the "Wheeler Dragoons" a company for the defence of Augusta, under the act of Congress of August 21st, 1861. Held: That this did not protect him from enrollment under the conscript Act, after his exemption, by reason of having put in a substitute, had been put an end to by Congress.

[3.] A contractor to supply the Confederate Government with arms, is not exempt, by reason thereof, from enrollment as a conscript.

*Habeas Corpus*, in Richmond Superior Court, decided by JUDGE HOOK, April Term 1864.

Ansley, aged thirty-eight years, being in the custody of Capt. Starr, who, as enrolling officer, held him for assignment to *general* military service in the army of the Confederate States, sued out a writ of *Habeas Corpus* before Judge Hook for his discharge. The writ issued on the 15th of April, 1864. At the hearing, which took place on the 19th of April, three distinct grounds of exemption from the service demanded, were presented to the Court, and insisted upon. These were, 1st. That the relator had furnished a substitute; 2d. That he was already in the service as a member of a local company; and 3d. That he was a contractor with the Government for the manufacture of arms. The facts which were made to appear to the Court, respecting each of these grounds, will now be stated separately in their order.

1st. *Substitution.*—On or about the 8th of December 1862, the relator put into the army of the Confederate States, for the war, a substitute who was forty-eight years of age on the 26th of the previous January. This act of substitution was admitted by the enrolling officer, in his return, and its regularity or original validity was not controverted.

2d. *Local Company.*—In July 1863, a local cavalry company was formed for the defence of the City of Augusta and its vicinity, called " The Wheeler Dragoons. " Of this company, Ansley, the relator, was a member. It tendered for service during the war, and was accepted, and mustered in for that period. Its muster-rolls, specifying the terms of service, were forwarded to the war department at Richmond, and commissions were issued from thence to its officers, the commissions agreeing in all respects with the muster-rolls, as to the period and other conditions of service. The final organization, as thus completed, took place in September 1863,

and was in conformity to an Act of Congress, approved August 21st 1861, and to General Orders on the subject issued by the Adjutant and Inspector General, by order of the Secretary of War, Nos. 86 and 98, Series of 1863.

The President gave to Col. Raines, Commandant of the Post of Augusta, authority to call out the company for such time as he should see fit. Under this authority, Col. Raines called it out for service once a week. Its duties, under this call, were to drill, to act as Provost guard, to guard hospitals, public property, prisoners of war, etc. The horses were shod at Government expense, and, when on duty, rations and forage were furnished by the Government. No pay had been drawn by any of the members. The company still existed, when this case was heard in the Court below, and its status, with respect to actual service, was as just described. Ansley's membership had not been terminated by any act of his, but his commanding officer had, under orders, turned him over for assignment to some company in general service. It was thus that he fell into the hands of the enrolling officer.

3. *Contract.*—On the first day of January 1864, the firm of Rigdon, Ansley & Co. entered into a contract with the Confederate States for the manufacture of pistols, known as " Colts Repeaters, " engaging for the production of a certain number each month, and becoming bound to carry out a previous contract made in March 1863, between the Government and some of the persons constituting this firm. The firm consisted of four members, one of whom was Ansley the relator, who was the book-keeper and financial manager. His duties were distinct from those of the other members, and theirs from his, and from those of one another. According to the evidence, private armories are carried on as public ones are, having book-keepers, time-keepers, and other officers, and in every armory there ought to be a competent financier. To the successful performance of the contract, Ansley was thought by two witnesses to be indispensable. One of these witnesses was the inspecting officer in the ordnance department, who had been sent out to inspect the armories at Athens and Augusta, and who had inspected this one carefully; the other,

was one of the members of the firm. A third witness, also a member of the firm, testified that the personal presence of Ansley was indispensable, though his duties, so far as the witness knew, might be performed by another, but not more efficiently. The capital stock of the firm was $160,000, and they worked sixty operatives. They expected to increase the capital soon, to $320,000, and the number of operatives to two hundred and fifty. They were executing their contract with the Government faithfully, and giving satisfaction; the arms of their manufacture were very good. Some time after January 5th, 1864, the firm applied for the exemption of all their members; but the application was refused by the Bureau of Conscription, as to Ansley and one other. Exemption was granted to two members who, for general service, were over age.

The Court ruled, that Ansley was liable to the service claimed of him, and remanded him accordingly. This judgment was excepted to as erroneous, and brought here for revision.

HILLIARD, for the plaintiff in error.

FRANK H. MILLER, for defendant.

LYON, J.

[1.] The plaintiff in error was not entitled to a discharge by reason of his having put into the service a substitute under the conscript act of 16th April 1862, and the amendment thereto of September 27th, 1862. The exemption thereby acquired, was put an end to by the act of 5th January 1864; which law, this Court adjudicated in *Darly and Fitzgerald vs. Harris*, to be constitutional.

[2.] It is claimed that the plaintiff was entitled to his discharge, because he was already in the military service of the Confederate States as a volunteer in "The Wheeler Dragoons," a company formed for the defence of the city of Augusta, under an act of Congress entitled "An act to provide for local defence and special service," approved August 21st,

1861; that the company was formed in July 1863, tendered to the War Department for the war, and was accepted upon the terms and conditions of its organization, and its officers commissioned accordingly. The company was not completely organized until September 1863. It was insisted that this enlistment into the military service, although for local defence and special service, by the applicant, and its acceptance by the President, formed a contract between the Government of the Confederate States of the one part, and this applicant, as well as every other member of the company, of the other part, that the members of the company should perform certain service, and that the Government, in consideration thereof, would not, during the term of enlistment, require of them any other military service. We do not see how this position can be maintained. The act certainly contains nothing to warrant such an idea, nor do the regulations of the War Department, in force at the organization of the company, authorize it. And to these only must we look to ascertain the intention of the parties, as well as their respective duties, rights, and privileges in the formation and reception of this company. They are operative as well on the Government as on the companies, etc., formed under them. General Orders No. 86, for 1863, applicable directly to companies, battalions, and regiments formed, or to be formed, under this act of August 21st, 1861, provides, in paragraph 1st, that "Companies, etc., composed of persons not within the age of conscription, (eighteen and forty,) will be accepted as volunteers throughout the Confederacy, under the act of August 21st, 1861, for local defence and special service;" pargraph 10—"That these organizations will be preferred to, and exempt their members from any call of militia." The 1st paragraph of this order was amended by General Orders No 98, of 20th July 1863, so as to read as follows: "Companies, battalions, and regiments, composed of persons not within the age of conscription, eighteen and forty-five, will be accepted as volunteers throughout the Confederacy, under the act of August 21st, 1861, for local

12

defence and special service." "Those persons belonging to such organizations, who are of conscript age, and neither exempted by law nor already in the service, will be discharged and reported to the bureau of conscription for enrolment."

Ansley, the applicant, entered the service as a volunteer, in the company organized under this act, in September 1863. He was within the conscript age, but not subject to it at the time, by reason of having put in a substitute. He accepted the service, subject to these regulations, and when his exemption from conscription subsequently ceased, by reason of the passage of the act of Congress, "To put an end to the exemption from military service of those who have heretofore furnished substitutes," he fell within the regulation imposed by paragraph 2, of General Orders 98, copied above, and was subject to conscription, and it was under this provision, which we think to have been in conformity to law, that he was enrolled and properly held in custody for the performance of the military service prescribed by the conscript act.

[3.] The applicant was not entitled to exemption by reason of his being a member of a firm that held a contract under the Confederate Government to manufacture pistols for it. The exemption act does not exempt the contractor, but the artisans, mechanics, and employees in the establishment of such persons as are engaged under contract with the Government in furnishing arms, etc: *Provided*, That the chief of the ordnance bureau, or some ordnance officer authorized by him for the purpose, shall approve of the number of operatives required in such establishment. Ansley, although a member of the firm, was employed as the book-keeper of the establishment, and his services in that capacity were necessary for the business, but he failed to show the necessary approval of the chief of the ordnance bureau to entitle himself to the exemption.

Judgment affirmed.