## NIXON v. THE STATE.

1. The offense committed in assaulting another with a deadly weapon, in a manner naturally tending to cause death, can not be reduced below the grade of assault with intent to murder, when there is no provocation for the assault other than the use of opprobrious words or insulting language by the person assaulted to the person making the assault.
2. There was no error in denying a new trial.

Argued June 7,—Decided June 16, 1897.

Indictment for assault with intent to murder. Before Judge Littlejohn. Dooly superior court. March term, 1897.

*J. H. Martin* and *D. L. Henderson*, for plaintiff in error.

*F. A. Hooper*, solicitor-general, contra.

LUMPKIN, P. J.    Section 103 of the Penal Code provides: "On the trial of an indictment for an assault, or an assault and battery, the defendant may give in evidence to the jury any opprobrious words, or abusive language, used by the prosecutor, or person assaulted or beaten; and such words may or may not amount to a justification, according to the nature and extent of the battery, all of which shall be determined by the jury." Construing these words, it has been held by this court, that one may justify an assault made upon another with "a small walking-stick," when provoked by the use by the latter of

opprobrious words, "provided the battery was not dispropor-
tioned to the insult offered." *Thompson* v. *State,* 55 *Ga.* 48,
52. But "opprobrious words will not justify stabbing." *Ward*
v. *State,* 56 *Ga.* 409. In *Reid* v. *State,* 71 *Ga.* 865, the head-
notes only of which are reported, it is laid down that: "On
the issue of assault and battery, abusive language, without
more, will not be a valid legal defense to battery with a
rock." The language just quoted is perhaps too broad for
general application, but construing it with reference to the
facts of *Reid's* case, and limiting its meaning accordingly,
it announces a sound doctrine. From the record on file in
the clerk's office of this court, it appears that the battery in
the case just referred to was committed with a rock; that two
severe wounds were inflicted on the head of the person as-
saulted, and that he was "knocked senseless and was disabled
for several weeks." The decision in that case is, therefore, to be
understood in the light of these facts. In the case of *Brown* v.
*State,* 58 *Ga.* 212, it was held that the law of justifying an as-
sault, or an assault and battery, by evidence of opprobrious
words, was not involved in the trial of an indictment for mur-
der, where it appeared that the deceased, upon being pro-
voked by opprobrious words addressed to him by the accused,
advanced upon and was about to strike the latter with a
pound-weight. In this connection, Bleckley, J., remarked:
"Though the prisoner provoked the attack by using opprobri-
ous words, there should not have been any use or exhibition
of the pound-weight, in resistance to mere words, under the
circumstances, and the principle of the above section [it
being the same as section 103 of the present Penal Code] does
not apply to the case." "Provocation by words will not jus-
tify an assault which is apparently dangerous to life." *Boat-
wright* v. *State,* 89 *Ga.* 141. "Under our [statute], opprobri-
ous words may justify a simple assault or an assault and bat-
tery, but they do not justify an attack with a deadly weapon,
made in a manner likely to produce death." *Butler* v. *State,*
92 *Ga.* 605, cited and followed in *Fussell* v. *State,* 94 *Ga.* 83. As
was said by Bleckley, J., in the case of *Ward* v. *State,* supra:
"It required a statute to authorize the jury to treat [such a

provocation] as justifying a battery. No statute has yet been passed, and probably never will be, to sanction stabbing as a means of resenting offensive language." Certainly, then, an assault with intent to murder can not, under our law as it now stands, be excused, however abusive and insulting may have been the language addressed to the person committing such assault.

It was shown by the evidence in the present case that the accused struck the prosecutor upon the head with a "Winchester shot-gun" weighing eight pounds, using it as a club and delivering a blow of sufficient force to break the stock thereof, which was made of black walnut. The effect of this blow upon the prosecutor was to knock him out of a window in which, or near which, he was sitting, and to render him totally unconscious for some time. Indeed, though "conscious off and on that night, [he] was not sensible till next morning [and] was laid up from that lick about two weeks"—a little over two weeks. In his statement, the accused, referring to the character of the assault made, by him upon the prosecutor, said : "I hit him a light lick; I didn't hit him a hard one"; and accounted for the breaking of the gun-stock by explaining that "the stock of that gun was cracked right. at the stock." He did not, however, undertake to deny that, nevertheless, the force of the blow was. sufficient to knock the prosecutor out of the window and render him insensible, nor did the accused offer in his behalf any evidence to contradict the testimony of the State's witnesses that such was the fact. The only excuse set up by him for making the assault was the use by the prosecutor of opprobrious words and insulting language addressed to and concerning him.

It is obvious that a gun such as is above described is a deadly weapon, whether used as a firearm, or as a club; and, in view of the undisputed facts which appeared in evidence, the bare statement of the accused that the blow which he struck with it was "a light lick," not "a hard one," would not have authorized the jury to conclude that "the battery was not disproportioned to the insult offered," which is the test as to justification laid down in *Thompson's* case, supra. The descrip-

tive words employed by the accused are simply relative terms, having no fixed or definite signification. He was evidently speaking by way of comparison, and with reference to the degree of force he might have used. If entirely sincere in what he said, it would seem that his idea of a "hard lick" was such a blow as would fell an ox. Compared with a blow of this kind, that delivered by him might, with some faint shadow of truth and accuracy, be characterized "a light lick." But where use is made of a deadly weapon, the nature and extent of the battery and the results thereof, and not merely the *relative* force of the blow administered as compared with that which might be inflicted with such a weapon, must determine and control the question of justification. For instance, comparatively "a light lick" with a battle-ax, well whetted and prepared for the occasion, might almost, if not quite, sever a man's head from his body. It is clear, however, that though relatively speaking such a blow may not have been "a hard one," this fact would not prevent an assault made with such a weapon, and attended with such a result, from being regarded as criminal, if provoked by mere words, no matter how offensive.

Without serious difficulty we hold, as matter of law, that the light (?) blow aimed at and taking effect upon the head of the prosecutor, being delivered with a deadly weapon and constituting an assault "apparently dangerous to life," was one which the accused could not justify under the provisions of the statute relied upon; for mere provocation by words will not excuse an assault of this nature and extent, "though the assailant may really intend only a moderate battery, and not to kill or seriously injure." *Boatwright* v. *State*, cited above. So far as the question of *justification* is concerned, what the accused actually did, not what he intended to do, is the test. Notwithstanding he may not have meditated murder, or even great bodily harm, he is nevertheless strictly accountable for the *actual results* of his criminal act.

The facts of the present case, as to which there was no conflict, imperatively demanded a conviction of assault with intent to murder. The offense of assault and battery was not

really involved in the case.   Under the circumstances appear-
ing, had the prosecutor responded to the assault made upon
him and slain the accused, it would have been reversible er-
ror, on a trial of the former for the homicide, for the court to
have charged the jury with reference to the law of assault and
battery.   *Brown* v. *State*, supra.   The provisions of section 103
of the Penal Code, as has been shown above, were entirely in-
applicable to the case presented; and it would have been
highly improper for the trial judge to have read this section
to the jury, or to have charged upon the theory that the ac-
cused had committed no higher grade of offense than that of
assault and battery.

Though the motion for a new trial contains a number of
grounds, the above discussion covers every question of enough
importance to require special notice.   Suffice it to say that no
error was committed by the court which demands, or would
authorize, a rehearing of the case.

*Judgment affirmed.   All the Justices concurring.*