## COLEMAN *v.* THE STATE.

1. A bail, in person or by duly authorized agent, may lawfully recapture his principal.
2. Without proof of authority so to do, the son of the bail can not empower a third person to make such arrest.
3. Unless properly deputized, a private citizen can not justify an arrest merely

because he has in his possession a warrant for the arrest of the person sought to be taken.

4. Treating the arrest as having been made without warrant of law or authority of the bail, the case is to be governed by the law of assault culminating in a homicide by the original wrong-doer.

5. So treating it, if the defendant began the unlawful arrest with an intent to kill if necessary to make it effective, and by a show of a deadly weapon put the deceased in the fears of his life, and the latter thereupon drew and fired, the defendant, having provoked and created a necessity, could not meet the same, but would be guilty of murder if under such circumstances he took the life of the party legally resisting the illegal arrest.

6. A citizen being unlawfully arrested has a right to resist force with force proportioned to that being used in detaining him.

7. If the force used in repelling the unlawful arrest was excessive and disproportioned to that needed to avoid detention, such force is not to be treated as lawful resistance, but as an unlawful attack.

8. If an unauthorized person seeks to make an arrest, but does nothing to put the other in real or apparent danger of life, and if the mere assault is met by drawing and firing a deadly weapon upon the person making the arrest, the latter, not having forfeited his right to live, and not having created a legal necessity for such deadly resistance, may defend himself against the excessive and unjustifiable counter-assault.

9. Under the evidence, there was no question of killing in hot blood ; the real issue was, whether the defendant was guilty of murder or justified on principles of self-defense. It was error to give the law of manslaughter in charge.

Argued January 16, — Decided January 26, 1905.

Conviction of manslaughter. Before Judge Daley. Emanuel superior court. November 15, 1904.

At the April term, 1902, of Bulloch superior court, John Griffin was indicted for aiding Oglesby to escape from jail. Griffin gave bail, with Collins as surety. Griffin having failed to answer, the bond was forfeited. R. E. Collins, the son of the surety on the bond, called on the officers to have Griffin arrested, it appearing that at the time he was in the county. According to the testimony for the defendant, the officer stated that he could not attempt to make the arrest just at that time, but advised that an offer of a reward be made. In compliance with this suggestion R. E. Collins, the son, offered a reward to Remer Coleman and Elzie Coleman if they would arrest Griffin. At the same time he put in their hands a warrant issued by I. W. Martin, and addressed to any sheriff, deputy sheriff, coroner, constable, or marshal of this State, commanding them to arrest the body of Griffin, who was charged, on the affidavit of R. E. Collins, with the offense

of "resisting legal process." Elzie and Remer Coleman, having
this warrant, proceeded to the place where Griffin lived, and found
him in the cotton-field. They invited him to go hunting. Griffin
consented. He had a pistol in his pocket, and carried a Win-
chester rifle. The party drove off, Griffin being seated in the
foot of the buggy, the two Colemans on the seat. There were no
eye-witnesses to the transaction. The State offered as a witness
Lawson Mercer, who testified, that Elzie Coleman "said they had
started hunting, and he said he didn't even think he would have
to kill this man; he said he thought the man would give up; he
didn't think he would have to kill him. He said, they were going
to try to arrest him; and he said, when they got down there a
piece, it seemed like he went to draw his pistol and told Griffin to
consider himself under arrest, and the other gentleman, Mr. Grif-
fin, he drawed his, just commenced to pull his, I think, as he took
his out, and told him to consider himself under arrest. When he
told him that, Mr. Griffin made up in here (left breast pocket) for
his, and it seemed that Mr. Griffin fired at him, and he slapped
the pistol down, and that time he said he had to fire himself to
save his life. And he said then Mr. Griffin jumped out of the
buggy and went to make around the buggy and dashed off and
went a piece and fell." On cross-examination the witness testified,
Coleman said "he had a warrant in his pocket, and told Mr. Grif-
fin to consider himself under arrest, and, at the same time he told
him that, he then and there prepared himself for any resistance
that might be made by Griffin by going for his gun — he took out
his revolver, and before he got his revolver Griffin out with his
and shot; that Griffin got the pistol from under his coat or vest
and shot at Coleman, and Mr. Coleman told me that after he had
been fired upon, that he then shot Griffin. I won't say whether
he was in the buggy when he shot him or when he turned around
the buggy. But it was after Coleman had been shot. He said
that as Griffin shot at him, he slapped the pistol down as he fired."
"Griffin was known as a law-breaking man, and had the reputa-
tion of being a bad man in the community." Another witness
testified, that Griffin was shot in the left side, the ball ranging
down.

For the defendant there was testimony, that Griffin had been
out of the county for some time, and that as to one warrant he

had said that he "was not going to submit, but would die before he would be arrested." His reputation for violence was bad. Remer Coleman, who was in the buggy at the time of the occurrence, testified that "he heard Elzie Coleman, the defendant, tell Griffin to consider himself under arrest, and the firing commenced at once; "that Griffin drew his pistol and fired at Elzie; that about that time Elzie shot him." The defendant, in his statement to the jury, said, that after driving "about a quarter of a mile I told Griffin to consider himself under arrest, and when I did so he drew his pistol from a pocket in his overalls, and when he drew his pistol I drew mine, and just as he threw it in my face I knocked it down time enough to save it from shooting me in my face, and when he fired, I fired." Coleman exhibited to the jury a place on his left leg where Griffin's shot took effect.

The judge charged on the law of murder, manslaughter, and justifiable homicide; and after the jury had been out some time, they returned and asked to be charged on the subject of involuntary manslaughter, to which the court replied, "The law of involuntary manslaughter is not applicable in this case," and then gave instructions as to murder and voluntary manslaughter when the homicide was in a heat of passion. Error is assigned on this charge, on the ground that there was no evidence tending to show the deed was done in the heat of passion, but the contention being that it was done on a sudden impulse when dealing with a notorious character for violence, to protect one's own life.

*Saffold & Larsen, Herrington & Lee,* and *L. J. Cowart,* for plaintiff in error. *G. H. Howard, solicitor-general pro tem.,* contra.

LAMAR, J. (After stating the foregoing facts.) 1–2. Where one accused of crime is released on bond, he is transferred from the custody of the sheriff to the legal, but friendly, custody of the bail, whose "dominion is a continuance of the original imprisonment," but they may at will surrender him again to the custody of the law. If the accused refuses to surrender, the bail can seize and hold him in order to make delivery in discharge of the bond. But the surety may be a woman, or a man physically too weak to cope with the accused; or the person charged with the crime may be at a distant point, and out of the reach of his bondsman. For these and other reasons, the bail may lawfully deputize an agent to seize the body and deliver him to the custody of the sheriff.

*Clark* v. *Gordon,* 82 *Ga.* 613 ; Penal Code, § 935 ; Taylor *v.* Taintor, 16 Wall. 371.   While this is true, a new trial can not be granted here because of the court's refusal to give the charge requested as to the right to make such arrest by an agent.   There was no evidence in the present case to show that the bail had appointed Coleman to recapture Griffin ; and nothing to show that he authorized his son, R. E. Collins, to make such arrest, or delegated to him any power to appoint agents for that purpose.

3. The warrant which R. E. Collins delivered to Coleman was in usual form, and directed as required by the Penal Code.   The defendant Coleman was not himself a peace officer, not a member of a posse, and had not been deputized to execute the warrant.   The fact that he had it in his possession conferred upon him no authority whatever.   The arrest, therefore, is to be treated as one made by a private citizen.   Its legality would then depend upon showing that it was made under the circumstances set out in the Penal Code, § 900.

4. There does not appear to have been any conversation between Coleman and Griffin—no demand for a show of the warrant or statement of the authority under which the arrest was made.   There was no reply to indicate whether it was at the instance of the bail, under the warrant for resisting legal process, because of a felony known to have been committed or to prevent an escape therefor.   We must assume, from the verdict, that the jury found that Coleman did not have authority to make the arrest.   If so, the remaining questions must be treated on the idea that the law of arrest is out of the case, and that Coleman was guilty of an assault.

5. At an early day it was held, that if the supposed officer purposely kills the other party for not submitting himself to an illegal arrest, it will, generally speaking, be murder.   East's P. C. 312 ; Foster's Crown Law, 271.   This principle, however, must be subject to many exceptions.   If the circumstances are such as to show that there was no malice ; if the person attempting such unauthorized arrest in good faith believes that he has the right to take the person sought to be detained, and in the course of the struggle, and in the heat engendered by the altercation, he takes the life of the person sought to be arrested, the modern cases seem to hold that he would only be guilty of manslaughter.   But if the

arrest was not only unauthorized, but was begun with the intent to kill, there would be malice. The killing at the end of a struggle which commenced with a felonious intent to take life would be murder. In the present case there was some evidence that Coleman may have intended to do what he did, and began the arrest, in the first instance, by drawing and presenting a deadly weapon, thereby putting Griffin, as a reasonable man, in fear of his life. If the jury found from the evidence that such was the fact, and that the shooting was but a continuation of an original murderous assault with a deadly weapon, and that this created on the part of Griffin the necessity to shoot in self-defense, Coleman could not justify himself in meeting the same with a like shot, since he brought the necessity upon himself. *Roach* v. *State*, 34 *Ga.* 85. Had the jury found such to be the fact, the verdict would necessarily have been that Coleman was guilty of murder. But the verdict in the present case was not for murder, but manslaughter, and there was evidence from which the jury could have found that Coleman did not begin the arrest by a show of any force which warranted Griffin in fearing that his life was in danger, but was only guilty of the offense of an assault in telling Griffin to consider himself under arrest, while carrying him in the buggy.

6–9. On that theory, therefore, the transaction from inception to termination is to be governed by the law applicable to assault culminating in a homicide by the person who was the original assailant. Thus treating it, the unlawful arrest — the assault — would have justified Griffin in breaking away, resisting, and repelling force with force. But the force which Griffin could thus rightfully use could only be proportionate to that exerted by Coleman, and sufficient to avoid the detention. If Coleman said, " Consider yourself under arrest," and laid hold of Griffin with a view of making the arrest effective, it was a wrong, but not one for which he forfeited his life, either at the hand of the law or at the hand of Griffin. Such conduct did not put Griffin in bodily danger. It provoked an assault, but not a felony. It did not create a legal necessity to kill. In the eye of the law liberty is very sacred, but so also is human life. If Griffin met an unlawful assault with force proportioned to the attack, he was in the right. As long as he remained in the right Coleman could not justly

shoot. But if Griffin resisted with disproportionate and therefore unlawful violence, — if without being put in real or apparent danger of life or serious bodily harm he fired upon Coleman for a mere assault, he became a wrong-doer, and Coleman became at once clothed with the right of self-defense against that which was not then lawful resistance, but an unlawful attack. For Coleman under such circumstances to fire and kill Griffin would not be murder or manslaughter, but justifiable homicide. The decision in State *v.* Campbell, 107 N. C. 949 (5), is opposed to this view. We find also a number of cases in other jurisdictions which rule that one who provokes a difficulty without felonious purpose, and during its progress is compelled to take the life of the person whom he attacks in order to save his own, can not be entirely justified upon the grounds of self-defense, but will be guilty of manslaughter. State *v.* Parker, 106 Mo. 218. See other authorities to the same effect cited in Clark's Criminal Law, 183–4. These decisions are based upon the wise and salutary principle, which is also recognized in this State, that the slayer must be faultless. *Haynes* v. *State*, 17 *Ga.* 465 (5). But while the direct question here involved has not been before this court in case of an unauthorized arrest, it has announced a principle which covers the point now under consideration. That principle is, that being faultless is to be understood as meaning, not that the slayer did nothing to provoke the difficulty, but that "the provocation must not have been such as would in law be sufficient to justify the attack against which he was defending himself when the homicide was committed. Anything short of such provocation as this would not put the slayer in any degree in the wrong, if it became necessary to kill in his own defense." *Butler* v. *State*, 92 *Ga.* 606; *Boatwright* v. *State*, 89 *Ga.* 140; *Fussell* v. *State*, 94 *Ga.* 78; *Mixon* v. *State*, 101 *Ga.* 575. Those were cases in which opprobrious words might have justified a blow. They did not justify a deadly assault. The assailant was not faultless, in that he provoked an attack. But he was faultless in that he did not provoke felony. The same principle applies here. The unlawful arrest justified a certain amount of resistance. But it did not justify shooting. Coleman had a right to defend himself against such wrongful counter-attack. Compare Creighton *v.* Commonwealth, 84 Ky. 103. It is also to be noted, on this branch of the

case, that the deadly weapon was instantly fired, that there was no opportunity afforded Coleman to discontinue the arrest, to withdraw, or to decline combat.　Under the evidence, if Coleman began by a felonious assault, he was guilty of murder.　If he resisted an unjustifiable deadly attack, he was not guilty of any offense.　There was no proof of any middle ground; nothing to show a killing in hot blood or passion, or because of a mere assault, and nothing in the record on which to base a charge of manslaughter.

We recognize the dilemma which frequently confronts the trial judge in this class of cases.　If he improperly omits to charge on the subject of manslaughter, a new trial must be granted.　Conversely, if he improperly includes that charge, a new trial will be granted.　But such is the law.　Considering the gravity of the issue, the error is one which has been repeatedly held to entitle the defendant to another hearing.

*Judgment reversed.　All the Justices concur.*