## 59506. HARRIS v. THE STATE.

SMITH, Judge.

Appellant appeals her conviction for possession of cocaine, valium, and marijuana, asserting, inter alia, that the evidence upon

---

which her conviction is based was obtained in violation of her Fourth Amendment rights. We reverse.

On March 30, 1979, an arrest warrant was issued for "Charles Davis a/k/a Fat Charles," who was wanted in connection with an alleged theft by taking. The warrant listed both an "Address" and a "Business Address." The "Address" on the warrant was listed as "Centra Villa Apts., Apt. B-65, 1717 Centra Villa S.W."[1]

The police arrived at the "Address" at approximately 9:30 a.m. on Tuesday, April 3, 1979. They knocked on the door, and approximately five minutes later, appellant answered the door in a housecoat, appearing as if she had been sleeping. The police informed appellant that they had a warrant for Davis and asked her if she knew him and if he was there. Appellant stated that she knew Davis and that he was not there. The police then told appellant that they would search the apartment in order to find him. Appellant asked whether the police had a search warrant. She was told "that we didn't have to have a search warrant, that all that was necessary under the state law was a warrant at that address for the person." The police then searched the apartment. Under a bed, police discovered certain drug paraphernalia: scales, a sifter and a spoon containing residue of a white substance. Appellant was then advised that "she might as well give us the rest of her stuff," whereupon she produced a peanut butter or mayonnaise jar "four or five inches tall" which had a blue crystal-like substance in it and "cellophane containing white powdery substance." Narcotic agents were then called. They began a systematic search of the apartment contending that appellant gave them permission to do so. When appellant later withdrew "permission" to search the apartment, a search warrant was obtained and the search continued. A quantity of lactose, used as "a cutting agent in cocaine," and quantities of several controlled substances such as cocaine, diazepam and marijuana were discovered. Charles Davis was not found in the apartment.

1. Appellant asserts that the motion to suppress should have been granted. We agree.

The legality of the search in the instant case depends upon whether the police had a right to enter the apartment in order to locate Charles Davis. The state has not demonstrated that the search was conducted with appellant's voluntary consent. See Schneckloth v. Bustamonte, 412 U. S. 218 (93 SC 2041, 36 LE2d 854) (1973); see also Dunaway v. New York, 442 U. S. 200 (99 SC 2248, 60 LE2d 824)

---

[1] This is the only evidence in the record that Davis in fact was living or, indeed, had ever lived at the above-stated address.

(1979).

Our constitution mandates that, in order for law enforcement officers to enter a residence for the purpose of effecting an arrest, they must have reasonable grounds to believe that the suspect is within. Payton v. New York, —— U. S. —— (100 SC 1371, 63 LE2d 639) (1980); United States v. Cravero, 545 F2d 406 (5th Cir. 1977).

To hold that the police had "reasonable grounds" to believe that Davis was inside appellant's apartment would, in our view, render the term virtually meaningless. The evidence adduced on motion to suppress established, at most, that the police had reasonable grounds to believe that Davis *might reside* at the stated address.

Certainly, it cannot be argued that the mere presence of the address on the information sheet which accompanied Davis' arrest warrant furnished probable cause to believe that Davis was at the address at the time of entry.[2] As stated in Payton v. New York, supra 63 LE2d 639, 661: "[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives *when there is reason to believe the suspect is within.*" (Emphasis supplied.)

In addition, we fail to see how any conduct of appellant in answering the door gave rise to reasonable grounds to believe that Davis was inside. Under the circumstances, the slight delay in answering the door was entirely understandable. When appellant answered the door, she was dressed in a housecoat and appeared to have been asleep. There is nothing in the record to give rise to a reasonable suspicion that appellant was not telling the truth when she stated that Davis was not there. On the basis of this record, any suspicion as to appellant's veracity was wholly unfounded. Indeed, appellant was telling the truth — Davis was not found at appellant's residence.

It is apparent that the state has failed to satisfy its burden of proof on the motion to suppress. *State v. Thomas,* 150 Ga. App. 170 (257 SE2d 28) (1979). Under the evidence, the police entry into the residence was in violation of appellant's constitutional rights. The motion to suppress should have been granted.

2. In view of our holding in Division 1 of this opinion, the remaining enumeration of error need not be considered.

---

[2] As indicated above, the arrest warrant listed both an "Address" and a "Business Address." It would seem far more likely that an individual would be at his place of business or work at 9:30 a.m. on a weekday than at his residence. However, in the instant case, the police first went to the residential "Address."

Judgment reversed. *Quillian, P. J., Shulman, Birdsong, Carley and Sognier, JJ.,* concur. *Deen, C. J., McMurray, P. J.,* and *Banke, J.,* dissent.

SUBMITTED FEBRUARY 5, 1980 —
DECIDED JULY 14, 1980 —

*Guy E. Davis, Jr.,* for appellant.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Assistant District Attorney,* for appellee.

McMURRAY, Presiding Judge, dissenting.

This case involves the possession of certain controlled substances. Contraband was found in defendant's possession when two Fulton County deputy sheriffs attempted to serve an arrest warrant on one Charles Davis, a/k/a "Fat Charles," at one of two listed addresses shown on the arrest warrant for Davis.

The majority here assumes, without evidence to support the assumption, that this was not also the residence of Davis but only that of the defendant and that the officers, believing Davis was present in defendant's apartment, proceeded to search it based upon the arrest warrant for Davis. From the evidence here it is my opinion that the court, as the trier of fact, was authorized to believe that the officers had probable cause to believe Davis was present at this address. I now set forth the evidence upon which this search was based.

Deputy sheriffs arrived at approximately 9:30 a.m. and "banged" (knocked) on the door. It was five or six minutes before defendant answered the door. The officers told defendant they had a warrant for Charles Davis and asked if he was there. Defendant stated that he was not. The deputy sheriffs again told defendant that they had a warrant for Charles Davis' arrest and told her they would search the apartment to see if he was there. The defendant inquired of the deputy sheriffs whether they had a search warrant, and they replied that they did not need to have a search warrant to search the apartment for Charles Davis.

The deputies showed the defendant the arrest warrant and proceeded to search the apartment, looking in the kitchen, behind the doors, and in the closets. Under the bed the deputies discovered certain drug paraphernalia, scales, and a sifter and a spoon containing residue of a white substance. Defendant was then advised that "she might as well give us the rest of her stuff," whereupon she produced a peanut butter jar or mayonnaise jar "four or five inches

tall" which had a blue crystal like substance in it and "a cellophane containing white powdery substance." Narcotic agents were then called who began a systematic search of the apartment contending that the defendant gave them permission to do so, but when she later withdrew permission to search the apartment they did obtain a search warrant and continued their search. A quantity of lactose, used as "a cutting agent in cocaine," and quantities of several controlled substances such as cocaine, diazepam and marijuana were discovered by officers (narcotic agents) of the Atlanta Police Department who had been called to the scene by the deputy sheriffs. Charles Davis, for whom the arrest warrant was issued, was not found in the apartment, but numerous articles of clothing, both male and female, were found in the apartment which was occupied at that particular time by the defendant, a female.

Defendant was indicted in Count 1 for the unlawful possession of cocaine; in Count 2 for the unlawful possession of diazepam, and in Count 3 for less than one ounce of marijuana.

Following the denial of the defendant's motion to suppress the evidence discovered during the search she was convicted and appeals.

In my opinion the warrant officers (deputy sheriffs) had ample authority to believe this was the apartment of Davis even though during the hearing there was some evidence presented that it was rented by the defendant. The officers in seeking to serve a felony warrant against Davis for the theft of an automobile proceeded to the address of the apartment as the first location where Davis might be found.

The defendant argues that the deputies had no information whatsoever from which a person might reasonably infer that the man they sought was on the premises. Further, they went to this apartment because it was located at one of the two addresses given on the face of the warrant, and the several minutes it took for the defendant, clothed in a robe, to answer the knock at her door and her admission that she knew Charles Davis and her denial that he was on the premises was insufficient information upon which the officers could base a decision to enter and search for him.

The state argues that the defendant's delay in answering the door at the address on the warrant gave the deputy sheriffs probable cause to believe that Davis was within, although the defendant was dressed in a housecoat and could have been asleep. Upon answering the door the defendant had acknowledged knowing the fugitive whom the deputies sought and stated that he was not present. While there was some evidence of a permissive search by the deputy sheriffs and later the narcotic officers, nevertheless, this case turns upon

whether the officers, at the time of their entry under cover of authority of law, had probable cause to believe that Davis was hiding in the residence. The defendant did not give the deputies permission to search until after their entry and initial discovery of possible contraband.

The officers fully advised her that they did not have to have a search warrant when they entered the residence with the arrest warrant. While looking for the said Davis named in the arrest warrant these officers found items which would render the defendant suspect of being involved with the possession of controlled substances. It is noted that she gave them a jar of suspected narcotics after they discovered the drug paraphernalia, and she may have thereafter eventually consented to some portions of the search of her dwelling, that is, after the initial discovery of the drug paraphernalia. But the state does not demonstrate any voluntary consent was given for the initial entrance and search of the apartment which must be based on the arrest warrant. See Schneckloth v. Bustamonte, 412 U. S. 218 (93 SC 2041, 36 LE2d 854). Hence all of the controlled substances discovered by the law enforcement officers during their search of the apartment stem directly from the entry by the deputy sheriffs.

In the recent case of Payton v. New York, —— U. S. —— (100 SC 1371, 63 LE2d 639) which turns on other facts, that court stated that "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Consequently, we have for decision here the issue of whether or not the officers in entering the dwelling had probable cause to suspect that he was hiding inside. A search is valid and the proceeds of the search admissible where officers reasonably believe they have probable cause to make an arrest and that items involved in a robbery are located in the apartment searched. Compare Hill v. California, 401 U. S. 797 (91 SC 1106, 28 LE2d 484).

The officers testified that in serving warrants it was not uncommon for them to find the person named in the warrant hiding in closets, behind doors, or under beds. When they were searching for the said Davis the drug paraphernalia was found under the bed and when they told the defendant she might as well give us "the rest of her stuff, . . . [s]he reached right behind her, [and] gave us a jar." This jar contained crystals used in keeping drugs dry and contained a cellophane package containing a white powdery substance.

When an officer holds a valid arrest warrant and reasonably believes that his subject is within the premises, even if it belongs to a

third party, then he need not obtain a search warrant for the purpose of arresting the suspect. See Agnello v. United States, 269 U. S. 20 (46 SC 4, 70 LE 145). There was evidence here that this was the dwelling of the defendant as well as that of the man for whom the officers were searching since both male and female clothing were found in the dwelling. A valid arrest warrant confers authority upon officers to enter a suspect's home to execute the warrant. See United States v. Hammond, 585 F2d 26, 27; and this authority is conditioned upon the existence of probable cause to believe the suspect is in the dwelling. United States v. Cravero, 545 F2d 406, 414 (cert. denied, 433 U. S. 915).

As there was evidence from which the court, as the trier of fact in the case sub judice, could decide that this was the residence of Davis and that the officers had probable cause to believe that he was present at the time of the entry with the arrest warrant, I do not believe the court erred in denying the motion to suppress. I would affirm the judgment.

I, therefore, respectfully dissent.

I am authorized to state that Chief Judge Deen and Judge Banke join in this dissent.