65217. MEASE v. THE STATE.
65218. BURKE v. THE STATE.

SOGNIER, Judge.

Both appellants were convicted at a joint trial of criminal trespass. Additionally, Mease was convicted of pointing a pistol at another and reckless conduct by waving a pistol around, and Burke was convicted of using abusive language in the presence of another. We granted a motion to consolidate the appeals.

Burke does not appeal her conviction of using abusive language in the presence of another, but contends the trial court erred by denying her motion for a directed verdict of acquittal of criminal trespass. Mease contends, inter alia, the trial court erred by denying her motion for a directed verdict of acquittal of all offenses.

At approximately 5:00 a.m. appellants, licensed bondsmen, went to Ann Barron's home with a pickup order and arrest warrant for Barron's daughter, Donna Gosdin. Although Barron told appellants that her daughter was not there appellants entered Barron's living room. Mease went upstairs carrying a pistol at her side and entered the master bedroom. Barron followed and as she opened the bedroom door, Mease pointed her pistol at Barron. Mease returned to the living room and Barron asked appellants to leave. However, Mease went downstairs to the family room, again carrying her pistol, and met another of Barron's daughters, Tarrant, coming upstairs. Mease pointed her pistol at Tarrant, but lowered it immediately on seeing it was not Gosdin. Gosdin was not in the house, and when appellants refused to leave, Tarrant called the police.

1. Appellants moved for a directed verdict of acquittal of all offenses except for the charge against Burke of using abusive language in the presence of another. The motions were denied and appellants contend this was error.

a. In regard to the offenses of criminal trespass by entering Barron's house without authority for an unlawful purpose, appellants argue that they were authorized by a pickup order and an arrest warrant for Gosdin to enter Barron's home and seize Gosdin and, thus, they cannot be guilty of criminal trespass.

OCGA § 16-7-21 (b) (Code Ann. § 26-1503) provides: "A person commits the offense of criminal trespass when he knowingly and without authority: (1) Enters upon the land or premises of another person . . . *for an unlawful purpose.*" (Emphasis supplied.)

The state contends the arrest warrants did not authorize anyone other than an authorized law enforcement officer to arrest Gosdin and, therefore, appellants had no authority to enter Barron's house.

Pretermitting the question of whether or not appellants entered Barron's house without authority is the question of whether they did so for an unlawful purpose, as alleged. In *Coleman v. State,* 121 Ga. 594, 597 (1-2) (49 SE 716) (1904), our Supreme Court held: "Where one accused of crime is released on bond, he is transferred from the custody of the sheriff to the legal, but friendly, custody of the bail, whose 'dominion is a continuance of the original imprisonment,' but they may at will surrender him again to the custody of the law. If the accused refuses to surrender, *the bail can seize and hold him* in order

to make delivery in discharge of the bond. . . . [T]he bail may lawfully deputize an agent to seize the body and deliver him to the custody of the sheriff." (Emphasis supplied.)

Appellants were licensed bondsmen in the employ of Delta Bonding Company, which issued Gosdin's bond. The state stipulated "that the bond was forfeited, that an arrest warrant apparently was issued for her arrest, and that they [appellants] had a legitimate right to look for that lady [Gosdin]." The state stipulated further that Gosdin gave Barron's address as her (Gosdin's) residence on the bond application.

In view of the holding in *Coleman,* supra, together with the fact that appellants were licensed bondsmen and the state's stipulation that appellants were authorized to look for Gosdin, the evidence does not support a finding that appellants entered Barron's house for an unlawful purpose. Thus, the state failed to prove an essential element of the offense charged in the accusation, and a verdict of acquittal was demanded as a matter of law. *Motes v. State,* 159 Ga. App. 255, 257 (1) (283 SE2d 43) (1981). Accordingly, it was error to deny appellants' motion for a directed verdict of acquittal as to the offenses of criminal trespass.

b. As to Mease's conviction of pointing a pistol at another, OCGA § 16-11-102 (formerly Code Ann. § 26-2908) provides: "A person is guilty of a misdemeanor when he intentionally and without legal justification points or aims a gun or pistol at another, whether the gun or pistol is loaded or unloaded."

Mease contends she was legally justified in pointing her pistol at Barron (she denied pointing the pistol at Tarrant) because the phrase "armed and dangerous" was at the top of the arrest warrant for Gosdin, and she was surprised when Barron opened the bedroom door. However, Mease knew Gosdin by sight. Since Barron was clearly visible when entering the bedroom and Mease knew it was not Gosdin, Mease was not justified in pointing her pistol at Barron. As Mease's actions fall directly within the conduct prohibited by OCGA § 16-11-102 (Code Ann. § 26-2908), it was not error to deny her motion for a directed verdict of acquittal. At the very least, there was a conflict in the evidence as to whether Mease's actions were justified, and a trial court's refusal to direct a verdict of acquittal is error only when there is no conflict in the evidence and a verdict of acquittal is demanded as a matter of law. *Sims v. State,* 242 Ga. 256, 257 (1-3) (248 SE2d 651) (1978).

c. In regard to the charge against Mease of reckless conduct, OCGA § 16-5-60 (Code Ann. § 26-2910) provides: "A person who . . . endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act . . . will . . .

endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor."

The accusation in this case alleged that Mease "did consciously disregard a substantial and unjustifiable risk *by her act of waving a pistol around.*" (Emphasis supplied.) There is no evidence in the record, including the testimony of Barron and Tarrant, that Mease was ever waving a pistol around. At most, she pointed the pistol at two persons she met suddenly, and lowered the pistol immediately upon recognizing that those persons were not Gosdin. Mease's action in pointing the pistol at Barron and Tarrant formed the basis of the accusation that Mease pointed a pistol at another without justification. Since the state failed to present any evidence that Mease was "waving a pistol around," a verdict of acquittal was demanded by the evidence, and it was error to deny Mease's motion for a directed verdict of acquittal as to the reckless conduct charge. OCGA § 17-9-1 (Code Ann. § 27-1802); *Motes v. State,* supra.

Mease's third enumeration of error is based on OCGA § 16-1-7 (a) (1) (Code Ann. § 26-506), which prohibits conviction of more than one crime established by the same conduct. In view of our holding in Division 1c, we need not discuss the remaining enumeration of error.

*Judgment affirmed in part and reversed in part in case number 65217. Judgment reversed as to criminal trespass in case number 65218. Quillian, P. J., Banke, Birdsong, and Pope, JJ., concur. Shulman, C. J., concurs in the judgment only. Deen, P. J., and McMurray, P. J., dissent. Carley, J., concurs in the judgment of dissent only.*

DECIDED MARCH 11, 1983.

*Edwin Marger, Robert O. Davies,* for appellants.
*T. Michael Martin, Assistant Solicitor, Martin L. Cowen III,* for appellee.

DEEN, Presiding Judge, dissenting.

The evidence supports the allegations that appellants had been to six bars during the night, had been drinking and had the odor of alcohol on their breath, and were belligerent and abusive in using profanity and obscene language (although it is argued that saying a few "God Damn's," if in fact it was said, is not obscene and abusive language), and no appeal was made as to the conviction of using abusive language in the presence of another. Around 5:00 a.m., they pounded on the mother homeowner's door with a pickup order and an

arrest warrant for the daughter. The homeowner indicated that her daughter was not there. One appellant, without consent of the homeowner, went through the house on several floors with a handgun, waving and pointing it at another daughter and at the homeowner, and waking up a small grandchild. They proceeded with the search despite the homeowner's demand that they leave.

Initially, I note that the evidence certainly would support a conviction of criminal trespass under OCGA § 16-7-21 (b) (3) (Code Ann. § 26-1503), which provides that "a person commits the offense of criminal trespass when he knowingly and without authority . . . remains upon the land or premises of another . . . after receiving notice from the owner . . . to depart." However, because the accusation charges appellants only under the theory of unauthorized entry for an unlawful purpose, OCGA § 16-7-21 (b) (1) (Code Ann. § 26-1503), the convictions must be reviewed under that theory.

The primary question in this case thus is, can one with an apparent right to arrest another later convert that into a full-blown search of the house of a third-party homeowner without the latter's permission? The majority opinion answers "yes." I must respectfully dissent.

The majority relies upon *Coleman v. State,* 121 Ga. 594 (49 SE 716) (1904), in deciding that appellants had the lawful purpose of seizing the homeowner's daughter who had forfeited the bond. *Coleman* certainly allows a licensed bondsman to seize and hold a principal upon forfeiture of the bond, in order to surrender her again to the custody of the law, but it should not be extended to allow unchecked entry and search of a third-party's home. While the contract of bail between the bondsman and the principal may legally authorize a bondsman to enter the premises of the principal to seize him, it should not authorize the invasion of another's home; the fact that a principal may indicate an incorrect residence to the bondsman simply is a risk that must be borne by the bondsman. I suggest that our perspective in considering the authority of a bondsman should be guided by the law of search and seizure.

Miller v. United States, 357 U. S. 301 (78 SC 1190, 2 LE2d 1332) (1958), makes it clear that an arrest warrant is necessary to arrest someone in the home absent exigent circumstances. "Every householder, the good and the bad, the guilty and the innocent, is entitled to the protection designed to secure the common interest against unlawful invasion of the house." Id. at 313. This case also quoted the famous speech attributed to William Pitt, the Earl of Chatham. " 'The poorest man may in his cottage bid defiance to all the forces of the Crown. It may be frail; its roof may shake; the wind may blow through it; the storm may enter; the rain may enter; but the

King of England cannot enter — all his force dares not cross the threshold of the ruined tenement!' " Id. at 307. Stegald v. United States, 451 U. S. 204 (101 SC 1642, 68 LE2d 38) (1981), sets to rest the fact that an arrest warrant for one party cannot be converted into a full-blown search warrant to search a second-party's home absent consent. "The issue in this case is whether, under the Fourth Amendment, a law enforcement officer may legally search for the subject of an arrest warrant in the home of a third-party without first obtaining a search warrant."

The latter case in effect overruled the Georgia Supreme Court case of State v. Harris, 246 Ga. 759 (272 SE2d 719) (1980), which itself had overruled Harris v. State, 155 Ga. App. 278 (270 SE2d 854) (1980). Also see State v. Harris, 248 Ga. 28 (280 SE2d 837) (1981) and Harris v. State, 157 Ga. App. 367 (278 SE2d 52) (1981).

While appellants in this case, not law enforcement officers, went to the home originally for a lawful purpose, to make a lawful arrest, thereafter when they commenced an illegal search of the house without a search warrant and over the protest of the homeowner, I consider them to have entered the home for an illegal purpose within the definition of criminal trespass. The conviction as to the pointing of the handgun or pistol as well as criminal trespass is amply supported by the evidence.

The whole court case of Brown v. State, 163 Ga. App. 209 (294 SE2d 305) (1982), where police officers made a warrantless search of a home for a third-party without the consent of the homeowner is distinguishable. There, those making the search were in "hot pursuit" of the subject and were police officers. Also there the approximately 265-lb. homeowner had physically blocked the doorway, pushed the officers back, it taking finally five officers and two sets of handcuffs to restrain the homeowner. In the case sub judice those making the search were not uniformed officers. It is undisputed that "hot pursuit" is not an issue, that no physical force was used by the mother homeowner, and that no search warrant was obtained and no consent given. The right under Coleman v. State, supra, to seize the body means a legal seizure at least to the extent of not running rampant through a third-party's home and violating the constitutional rights of other citizens.

"No right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." Union Pacific R. Co. v. Botsford, 141 U. S. 250, 251 (11 SC 1000, 35 LE 734) (1891). "The two provisions of the constitution which we have been discussing appear in the fundamental law of every State of this

Union, as well as in the federal constitution. They are the sacred civil jewels which have come down to us from an English ancestry, forced from the unwilling hand of tyranny by the apostles of personal liberty and personal security. They are hallowed by the blood of a thousand struggles, and were stored away for safe-keeping in the casket of the constitution. It is infidelity to forget them; it is sacrilege to disregard them; it is despotic to trample upon them. They are given as a sacred trust into the keeping of the courts, who should with sleepless vigilance guard these priceless gifts of a free government. We hear and read much of the lawlessness of the people. One of the most dangerous manifestations of this evil is the lawlessness of the ministers of the law." *Underwood v. State,* 13 Ga. App. 206, 213 (78 SE 1103) (1913).

As discussed above, law enforcement officers, armed merely with an arrest warrant for the homeowner's daughter who did not live with the homeowner, could not have legally proceeded with the search under the circumstances of this case. The incident of bail bondsmen proceeding with such a search strikes me as equally illegal and unpalatable.

I would affirm the trial court in all respects.

I am authorized to state that Presiding Judge McMurray concurs in this dissent, and Judge Carley concurs in the judgment of the dissent only.