CARTER *v.* PEOPLES NATIONAL BANK.

1. Where to a rule nisi to foreclose a mortgage on land the mortgagor filed an answer setting up that the debt secured was usurious, and named a given sum as the usury, and prayed that such sum be deducted from the principal of the debt, and both the fact and amount of usury were admitted and the principal of the debt was reduced by the amount so claimed to be usurious, the mortgagor obtained all to which he was entitled under the plea, and the question whether (the creditor being a national bank) the entire interest due on the debt was forfeited, not having been made by the plea nor in any manner passed upon, will not be considered here.

2. A plea interposed to a proceeding to foreclose a mortgage on land, in a superior court of this State, that, pending the proceedings to foreclose, the mortgagor was adjudicated a bankrupt, and praying that such proceedings be stayed for the period of twelve months or until the question of the discharge in bankruptcy of the mortgagor is determined, is not good, and the court committed no error in sustaining a demurrer to the same.

Argued November 2, 1899. — Decided January 27, 1900.

Foreclosure of mortgage. Before Judge Butt. Sumter superior court. November term, 1898.

*J. A. Ansley* and *J. A. Ansley Jr.*, for plaintiff in error.
*E. A. Hawkins*, contra.

LITTLE, J. At the May term, 1898, of Sumter superior court, the defendant in error filed its petition to foreclose a mortgage executed by the plaintiff in error on the 5th day of December, 1892, to secure a promissory note payable December 5, 1893,

for the principal sum of $1,120, besides interest, etc., the property described in the mortgage being a certain lot in the city of Americus. On this petition a rule nisi issued in the usual form, and due service was made. At the November term, 1898, being the return term of said rule, the defendant appeared and filed a plea of usury, in which he alleged that the amount of usury in said note was $120, and prayed for a judgment deducting said sum from the amount apparently due on the note. While the plea avers that the note was given to a national bank and therefore all interest as well as usury charged is forfeited, it further alleges: "amount of interest and usury in said note is $120, and defendant prays the court that the said amount of $120 in said note is void and forfeited, and prays the court for a judgment deducting the sum of $120 from said note."

1. It is only necessary to say, as to the plea of usury, that the fact of usury having been charged and the amount of the same was not contested, and on motion of plaintiff's counsel the verdict, which was directed by the court, was for the sum of one thousand dollars principal, being the amount due, less the exact amount of usury pleaded and admitted to have been charged. The defendant, therefore, obtained all that he contended for in his plea, and has, therefore, no right to complain of the verdict and judgment rendered; nor, under the plea filed, can the point that, the plaintiff being a national bank, all interest was forfeited, be considered, because that question is not properly raised, nor does it appear to have been passed on by the trial judge.

2. At the return term of the rule nisi, the defendant amended his plea and averred that, since it was filed and during the pendency of the proceedings to foreclose the mortgage, he had been adjudicated a bankrupt, the adjudication having been made on January 14, 1899, and he prayed that the proceedings to foreclose the mortgage be stayed as provided in the bankrupt act of 1898. He further alleged that no trustee had been appointed, and no meeting of his creditors had. This plea was demurred to, and the demurrer was sustained and the plea stricken, and he excepted. It will.be noted that the mort-

gage was executed about six years before the plaintiff in error was adjudicated a bankrupt, and also that no question arose in relation to the validity of the debt nor the proper execution and record of the mortgage which was given to secure it. Section 11 of the bankrupt act, approved July 1, 1898, declares that "A suit which is founded upon a claim from which a discharge would be a release, and which is pending against a person at the time of the filing of a petition against him, shall be stayed until after an adjudication or the dismissal of the petition ; if such person is adjudged a bankrupt, such action may be further stayed until twelve months after the date of such adjudication, or, if within that time such person applies for a discharge, then until the question of such discharge is determined." It appears from this provision that a stay of a pending suit against the person adjudged a bankrupt will in any event only be granted when such suit is founded on a claim from which a discharge in bankruptcy would be a release. Assuming that the mortgage was regular, and created a valid lien on the property of the bankrupt, under the provisions of the bankrupt act, the mortgagee became a preferred creditor of the bankrupt.

Section 1 of the act, as found in Collier on Bankruptcy, 3, subdivision 23, declares that the term "secured creditor" shall include a creditor who has security for his debt upon the property of the bankrupt, of a nature to be assignable under this act, etc. Undoubtedly within this definition the bank became in 1892 a secured creditor of the plaintiff in error, which relation existed at the time of the adjudication of bankruptcy. Section 57 of the act, defining what proofs in bankruptcy may be made by secured creditors, in subdivision e declares that "Claims of secured creditors and those who have priority may be allowed to enable such creditors to participate in the proceedings at creditors' meetings held prior to the determination of the value of their securities or priorities, but shall be allowed for such sums only as to the courts seem to be owing over and above the value of their securities or priorities"; and by subdivision g of the same act it is declared that "The claims of creditors who have received preferences shall not be allowed

unless such creditors shall surrender their preferences." Subdivision *h* of the act declares that "The value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement pursuant to which such securities were delivered to such creditors or by such creditors and the trustee, by agreement, arbitration, compromise, or litigation, as the court may direct, and the amount of such value shall be credited upon such claims, and a dividend shall be paid only on the unpaid balance"; and general order in bankruptcy No. 28 provides for the redemption by the trustee of the mortgaged property of the bankrupt. It must therefore be evident that it was the intention of Congress in the enactment of the bankrupt law to permit a legally secured creditor to hold to his security, and that its value should be appropriated to his claim, in preference to general creditors. Now, if a suit against a bankrupt can only be stayed when it is founded on a claim from which a discharge would be a release, and a preferred creditor is not allowed, unless he surrenders his preference, to prove his entire claim, but proof of his debt otherwise can only be made in the amount which his debt exceeds the value of the securities, it would seem to follow that there should be no stay of a proceeding which does not seek a general or personal judgment against the bankrupt, but is only instituted to foreclose and establish his lien on property, which in no event, unless he surrenders his lien, can be applied to any other debt. But suppose it be said that if the property is of greater value than the amount of the debt there would be no provision for controlling this excess in the interest of the general creditors. It may be replied that the trustee is invested with power to redeem the property, and, by so doing, it, unincumbered, becomes subject to be appropriated to the claims of creditors; but even if this be not done, the excess over the debt which the property brought at the sale by the sheriff would undoubtedly be a part of the bankrupt's estate and subject to the control of the court of bankruptcy. But in any event, where the creditor does not elect to surrender his security and make proof of his entire claim, and thus become entitled to share in the bankrupt's estate equally with the owners

of other proved claims, it would be hardly fair, when he elects to rely on his security, to prohibit him from appropriating its value to the payment of his debt in the manner prescribed by law at the time of the execution of his contract, to wit, by foreclosure in the State court.    Nor do we think, properly interpreted, the provision of the act in relation to granting a stay of pending proceedings applies to a case of this character.    A mortgage creditor is not such an one as is contemplated in the bankrupt act when it refers in general terms to creditors.    By subdivision *b* of par. 56 of the act, creditors holding security for their debts are not entitled to vote at creditors' meetings, nor are the claims held by them counted in computing either the number of creditors or the amount of their claims, except when the amount of their claims exceed the values of the securities held, and then only for such excess; thus excluding from the bankrupt court so much and such part of the debt as the security is of sufficient value to pay.    By referring to forms Nos. 43 and 44, prescribed by the Supreme Court of the United States for proceedings in bankruptcy, it will be found that it is clearly contemplated that a trustee in bankruptcy may not only redeem the mortgaged property, but he may sell the equity of redemption in   such property, which is all the interest in it that the debtor has—in other words, that the bankrupt court recognizes the right of the creditor to have the property on which he has a valid lien pay the debt for which it is bound, to the exclusion of other creditors, and that the excess above the debt secured is all that court will administer where there is no surrender of the lien.

We have thus gone into detail, desiring to show that it is not the purpose of the act that the bankrupt court shall assume custody of property given to secure a debt due by the bankrupt, as a part of his assets, unless the secured creditor so elects; and if this be true, and if the holder of the mortgage on such property has a claim not provable in bankruptcy, then there can exist no reason why that holder should not resort to the State court to enforce his lien against the property, nor why after such proceedings have been instituted they should be stayed and the enforcement of the lien postponed indefinitely,

when the result is bound to be the same. But there is another view of the question, under which we think this court is committed to the doctrine that the State court has jurisdiction to foreclose a mortgage after the mortgagor has been adjudicated a bankrupt under such provisions of law as are found in the act of 1898. So far as the rights of preferred creditors are concerned, there seems to us to be but little difference between the act of 1898 and that of 1867. Under section 5075 of the Revised Statutes of the United States, which was compiled from the last-mentioned act, it is provided that a creditor who has a mortgage or pledge of real or personal property, made by the bankrupt for the purpose of securing a debt, shall be admitted only as a creditor for the balance of the debt after deducting the value of the property, and, as in the present act, there is a provision that this value may be ascertained by agreement and also that the creditor may release or convey his claim to the assignee and be permitted to prove his whole debt. Practically, the provisions of the two acts in this regard are the same. Under the act of 1867 it was held in the case of *Toler* v. *Passmore*, 62 *Ga.* 263, that where, pending a proceeding to foreclose a mortgage on real estate, a plea was interposed that the mortgagor had been adjudicated a bankrupt, and a motion made to continue the case to await the discharge in bankruptcy, this court held that the motion to continue was properly overruled, because the discharge when had would not affect the mortgage lien; and a similar ruling was made in *Brady* v. *Brady*, 71 *Ga.* 71; and in the case of *Broach* v. *Powell*, 79 *Ga.* 79, it was held that the fact that mortgaged property is subject to be administered in bankruptcy will not entitle the mortgagor to resist the administration of it by foreclosure and sale under proceedings in the appropriate court of this State. See also 91 U. S. 521; *Cumming* v. *Clegg*, 52 *Ga.* 605; *Hatcher* v. *Jones*, 53 *Ga.* 208; *Price* v. *Amis*, 58 *Ga.* 604. We are not now called on to pass any opinion as to whether any different ruling should be made if the trustee in bankruptcy sought to enjoin either the proceedings to foreclose the mortgage in the State court, or a sale decreed in conformity thereto. That question is not involved here. The motion to stay was made by the mortgagor, who was the adjudicated

bankrupt. But as we find no material difference between the bankrupt act of 1867 and that of 1898 as to the rights of a secured or mortgage creditor, nor in the provisions made by the two acts as to the disposition of the property on which the lien exists, and as this court has repeatedly ruled that under the act of 1867 the mortgage could be properly foreclosed in the State court, and also because of the construction we place on the act of 1898, it is our opinion that the demurrer to the plea was properly sustained.

*Judgment affirmed. All the Justices concurring.*