### 729.  GLAZE v. THE STATE.

1. In a criminal case, where the guilt or innocence of the defendant is wholly dependent upon circumstantial evidence, the jury should be instructed, without request, that his guilt must be shown to the exclusion of every other reasonable hypothesis.

2. The controlling issue in a case must not only be submitted to the jury with such appropriate instructions as will call their attention to the existence of such issue, but the charge of the court must further contain such clear, apt, and definite exposition of the specific principles of law applicable to the case as will enable the jury to deal with the real issue in the case and to properly decide it. And this is true whether a specific request be made or not.

3. Where there is only one defense on which a party relies, failure to instruct the jury as to this defense so specifically that the jury will not only be required to pass upon it, but will be able to do so intelligently, under pertinent rules of law and evidence, practically withdraws that defense, and is, in effect, tantamount to directing a verdict.

Accusation of larceny from house, from city court of Americus —Judge Crisp.  July 18, 1907.

Submitted October 9,—Decided October 22, 1907.

*Shipp & Sheppard, J. A. Hixon,* for plaintiff in error.

*Zach. Childers, solicitor,* contra.

RUSSELL, J.  Plaintiff in error was convicted of the offense of larceny from the house. The evidence showed, that Glaze went into the store of A. E. Luke, in the presence of a clerk and of a customer who was at that time being waited upon by the clerk, and that he claimed to want to buy a gun. The clerk was busy waiting on the other customer, and Glaze, while in plain view of the clerk, went to the gun-rack and took down the gun alleged to have been stolen, and began to examine it, simultaneously speaking to the clerk, who was also the brother of the prosecutor. The

clerk was at that time cutting off a piece of meat for his customer, and only ten or fifteen feet from the defendant. The clerk, the customer, and the defendant were the only persons in the store. Before the clerk finished waiting on the other customer, a noise was heard on the outside, and a buggy passed. The defendant started out hurriedly, carrying the gun with him, and the clerk called to him to "put down that gun." The buggy which was passing was the buggy of the defendant, which he had previously refused to lend to one of the persons whom he found in the buggy and who was driving away. When the clerk called out "put down that gun," the defendant immediately dropped it, or, as he claims, stood it against the store, immediately outside the store door, and ran on and took possession of his buggy, which was being rapidly driven off by the persons in it. There was practically but little difference between the State and the defendant as to any of the material facts. The defendant claimed that he set the gun down and pursued the parties who were attempting to carry off his buggy. The State insisted that the defendant ran off with the gun, and that he dropped it only because his theft was discovered. The prosecutor immediately pursued the defendant, and overtook him before he had succeeded in overtaking his buggy; and when the prosecutor seized the defendant, the latter jerked loose, saying he had done nothing, and continued running until he overtook his buggy. It is not necessary to consider the evidence, however, as to the pursuit of the defendant, because his conduct would be just as consistent with the theory that he was trying to overtake his buggy, if he were innocent, as that he was trying to escape, if he were guilty; for he was well known both to the prosecutor and to his brother, the clerk in the store. The only question in the case, therefore, which the jury had to determine was, whether at the time that the defendant went out of the store he had the intention of stealing the gun, or, having only the intention of getting possession of his buggy, he thoughtlessly took the gun with him without any intention of converting it to his own use. The question of the defendant's intention is the only question in the case. It is the paramount,—the only issue.

The accusation alleged, that "Alex. Glaze on the 20th day of October. in the year 1906, . . did . . , unlawfully and with force and arms, the house, to wit the storehouse, of E. A.

Luke, in said county situate, enter, and, having entered, one double-barrel, breech-loading shotgun, of the personal goods of E. A. Luke, in said house then and there being found, of the value of $15, did wrongfully, fraudulently, and privately take therefrom and carry away, with intent to steal the same." The accusation is good, under either §178 or §182 of the Penal Code. As the offense is denominated "misdemeanor," it was perhaps intended to be brought under §182. But, whether brought under §178 or §182, there is no allegation that the defendant entered the store-house with intent to steal. "Larceny from the house is the breaking or entering any house with the intent to steal, or after breaking or entering said house, stealing therefrom anything of value." Penal Code, §178. Under the statute the offense can be committed in four different ways. It may consist in breaking a house with intent to steal (provided the offense is not burglary); entering any house with intent to steal; breaking a house and stealing therefrom, where it can be accomplished without entry; or entering and stealing. The offense can be stated, therefore, in more than one way in the accusation, but in this accusation only one method is charged, to wit, that the defendant, after entering the house, carried away the gun with intent to steal it. And if the offense be based upon §182, the same thing is true; for the State's case as set out in the bill of indictment limited the charge to entering the store and stealing therefrom. Section 182 defines two classes of larceny from the house, and distinguishes them. It says: "Any person breaking and entering any house or building (other than a dwelling-house or its appurtenances) with intent to steal, but who is detected and prevented from carrying such intent into effect;" this is the first class. It is directed against those who break and enter a certain class of houses with intent to steal, but are detected before they succeed in stealing any of the articles therein contained. The section then proceeds in the following language: "and any person breaking or entering any such house or building, and stealing therefrom any money, goods, chattels, wares or merchandise, or any other thing or article of value, shall be guilty of a misdemeanor." Of course this second division of the section is itself subdivided into thefts, where there is a breaking and entering in order to accomplish the theft, and where there is no breaking but merely an entrance into the building and a theft

is accomplished. But in both cases a theft must actually be committed. Under the first portion of §182, as in the first clause of §178, where a house other than a dwelling-house and its appurtenances is broken and entered with intent to steal, and the offender is detected, he is guilty of larceny from the house, though nothing be taken.

Whether the accusation, therefore, be construed as based upon §178, or upon §182 of the Penal Code, the State relied for conviction solely upon proof that the defendant, after having entered the store, formed the intent to steal; and upon the sole charge that the gun was carried away with the intent to steal the same. The distance of the asportation would make no difference, if the defendant in carrying away the gun intended to steal it. That he dropped the gun instead of carrying it with him would afford him no excuse or defense, if, before he dropped it, he had intended to steal it. The intention of the defendant, therefore, becomes a matter of paramount importance to be considered by the jury. If the jury should find that he carried the gun out of the store with the intent to steal it, he would be guilty. If, on the contrary, the evidence does not establish this fact, the defendant should be acquitted. The intention is always a material element in the offense of larceny; in this case it is especially material, in view of the fact that the taking was admitted, and the defendant's only defense was that there was no intention to steal it. The defendant's complaint is that not only was his defense practically withdrawn from the jury by the charge of the court, but further, that the jury should have been fully instructed upon the law on the subject of intent, so as to enable them intelligently to weigh and consider the testimony in the case. It is also insisted by the plaintiff in error that the verdict is contrary to the evidence. The plaintiff in error insists that the court should have charged the jury the law relative to circumstantial evidence, as applicable to the circumstances of the case and to the intention of the defendant at the time of the taking. In his motion for new trial the defendant further contends that there was no issue between the State and the defendant as to the taking or the manner of the taking, the only contested issue being as to the intention of the defendant at the time of the taking; and, the court having failed to charge the jury with reference to intention in this connection, this was a

failure to charge the law touching the material issue involved in the case. The trial judge, in his charge, made no reference to the subject of intention, other than by quoting §178 of the Penal Code and giving the following explanatory instruction: "Now, gentlemen of the jury, if you are satisfied beyond a reasonable doubt that Alex. Glaze, in Sumter county, at the time alleged in the accusation, wrongfully, fraudulently, and privately took and carried away from the storehouse of E. A. Luke one double-barrel breech-loading shotgun, the property of E. A. Luke, and the gun had any value, with the intent to steal the same, he would have violated the law, and you should find him guilty of the offense charged. On the contrary, if you do not believe this, or if you have reasonable doubt of it, he would not be guilty, and you should acquit him." We think the complaint of the plaintiff in error is well founded. The charge of the court is correct as far as it goes, but it does not go far enough. The jury should have been instructed that the intention of the defendant in taking the gun was the matter especially to be considered by them and (in view of the fact that this could be shown only by circumstantial evidence) the jury should further have been instructed that where the guilt of the defendant was dependent entirely upon circumstantial evidence, the guilt of the accused must be shown to the exclusion of every other reasonable hypothesis. *Riley* v. *State,* 1 *Ga. App.* 651 (57 S. E. 1031). There was only one material issue in the case, to wit, whether there was an intent to steal the gun, existing in the mind of the defendant at the time that he carried it away. This issue was not dependent upon the defendant's statement for its existence. It necessarily arose, regardless of the statement, from the other evidence in the case, and the jury should have been more fully instructed with reference to this issue than by mere reference to the intent in the language of the statute. It is not only error to submit to the jury an issue which has no foundation in the evidence, or give instructions which are not applicable to the evidence, or to present a contention which is not urged by the party. It seems to have been uniformly held by the Supreme Court that the omission to submit the controlling issue in the case to the jury was such an error as demanded the grant of a new trial. And such issue must be submitted with such appropriate instructions as will not only call the attention of the jury to the

existence of the issue, but the charge of the court must contain such clear, apt, and definite exposition of the specific principles of law applicable to the case as will enable the jury to deal with the real issue in the case and properly to decide it. And this is true whether a specific request be made or not. Where there is only *one* defense on which a party relies, to fail to instruct the jury as to this defense so specifically that the jury will be not only required to pass upon it, but will be able to do so intelligently under pertinent rules of law and evidence, virtually withdraws that defense, and is, in effect, to direct a verdict. When the only real contention in a case is only mentioned en passant, and then dismissed, as it were, with a wave of the hand, it is worse than ignored. To use the language of Justice Lumpkin in *Smith* v. *State,* 109 *Ga.* 485 (35 S. E. 61), the defense is "chilled by judicial oversight or blighted by implied judicial disapproval." In *Chattanooga & Durham R. Co.* v. *Voils,* 113 *Ga.* 362 (38 S. E. 819), the Supreme Court granted a new trial solely upon the ground that the judge did not submit to the jury the main defense relied upon by the defendant. The court says, that "where the company relies mainly upon one defense and introduces evidence to sustain it [and the same thing would be true if the evidence introduced by the opposite party sustains it], it is error, demanding a new trial, for the judge to omit to call the attention of the jury to this defense. This is true whether or not he is requested by counsel to do so. Unless the judge charges upon such defense, and thereby calls the attention of the jury to it, the case is not properly tried." It is true that the *Voils* case was a civil suit; but unless the right of personal liberty is inferior to the right of property, the same rule must govern in a case wherein a citizen is charged with crime, especially where the defense is not dependent alone upon the statement of the defendant.

In *Central R. R.* v. *Harris,* 76 *Ga.* 509, the point was made that a plaintiff in error could not use the same exception as that now insisted upon in the present case, because "he did not call the attention of the court [below] to the omission of which he now complains;" but Chief Justice Jackson, reviewing all of the former decisions of the Supreme Court on the subject, says, "the cases cited, and the principle on which they rest, do not apply to the clear omission to notice in the charge a plain defense of the com-

pany arising out of [the] evidence so as not to escape the observation. of the judge. . . The courts will not allow a party to lie in wait for the judge when he charges substantially the law covering the case, and then object to the insufficiency of a portion of it; but in every case, the law of it must be given in substance to the jury, because if it is not given, the general verdict they give is not upon the law of the case, but on facts without instructions on the law of the case. The ship is at sea without chart or pilot, and can never reach the port to which it is bound without their guidance. The verdict can never be a legal verdict unless instructions on the law of the case be given by him who presides for that purpose." See also citations in that decision, p. 511. The judgment was reversed, as expressly stated, solely because the charge ignored the defense set up by the defendant.

In view of the fact, as it appears from the record, that the defendant had not, and could not have, any·other defense than that his taking (which was admitted) was *not with intent to steal,* we think that an instruction to the jury to the effect, first, that they should consider what was the intention at the time that he took the gun and carried it out of the store; and that, secondly, unless the jury were satisfied, to the exclusion of every other reasonable hypothesis or supposition, that when the defendant took the gun, if he took it, he intended to steal it, they should acquit him, was demanded, even without request.

In *Horton* v. *State,* 120 *Ga.* 307 (47 S. E. 969), it was held that the defendant was entitled to a charge on the subject of manslaughter, and the judgment was reversed because of the failure to charge therein, although his counsel (so far from requesting that the law of manslaughter be charged) actually insisted at the trial that there was "no manslaughter in the case." Our opinion is further confirmed by the rulings in *Phenix Mfg. Co.* v. *Hart,* 112 *Ga.* 765 (38 S. E. 67) ; *Seymour* v. *State,* 102 *Ga.* 806 (30 S. E. 263) ; *Mays* v. *Shields,* 117 *Ga.* 817 (45 S. E. 68) ; *Whelchel* v. *Electric Ry. Co.,* 116 *Ga.* 431 (3) (42 S. E. 776) ; *Whedon* v. *Knight,* 112 *Ga.* 642-3 (37 S. E. 972). The publicity of the taking, the delay of more than two months in beginning the prosecution, and the admission of the prosecutor that negotiations were meanwhile being carried on with reference to the payment of an indebtedness of $150, due him by a brother-in-law of the defend-

ant, as well as the undisputed fact that one of the main witnesses for the State had settled with the prosecutor for a stolen gun and had never been prosecuted for the theft, render us the less reluctant to order a new trial, in which the guilt of this defendant, if he be guilty, can be established beyond legal question.

*Judgment reversed.*