## 13380. EVANS *v.* THE STATE.

BROYLES, C. J. 1. The alleged newly discovered evidence is merely cumulative and impeaching and is not of such a character as would probably cause a different verdict upon another trial of the case.

2. There is no substantial merit in the complaint that the judge (in the absence of any request to do so) failed to instruct the jury upon the sole issue raised by the defendant upon the trial, to wit, that he had no intention of committing the crime charged (larceny from the house), " because he purchased the goods alleged in said indictment from the prosecutor, J. L. Goldman, in good faith, by the said Goldman extending to him (this movant) credit for the price of said goods until this defendant sold his cotton, and was then to pay for the goods." The court did charge the jury that if the defendant entered the prosecutor's store-house, and, after so entering, did fraudulently and privately take and carry away therefrom any of the articles mentioned in the indictment, *with intent to steal the same,* he would be guilty as charged. This reference to the defendant's intent to steal was sufficient, in the absence of a request for a fuller charge upon that subject. The facts of this case easily distinguish it from *Glaze* v. *State,* 2 *Ga. App.* 704 (58 S. E. 1126), relied on by counsel for the plaintiff in error.

3. The case against the defendant was exceedingly weak, but the verdict is supported by some evidence, and, the finding of the jury having been approved by the trial judge, this court is powerless to interfere.

> *Judgment affirmed. Luke, J., concurs. Bloodworth, J., dissents.*
>
> DECIDED MAY 10, 1922. REHEARING DENIED JUNE 13, 1922.

Indictment for larceny from house; from Warren superior court — Judge Shurley. February 7, 1922.

Alfred Evans was charged with larceny of certain shoes, trousers,

and hose from the storehouse of Goldman. Goldman testified: "On or about the 25th of October, 1920, Alfred Evans, the defendant, came into my store at Norwood, Ga., and wanted to buy some goods, — shoes, pants and other things. I showed him what he asked for, and he said he would take them up. I wrapped the goods up, and then the defendant wanted [me?] to extend to him credit for the goods, saying that he would pay me for it as soon as he sold his cotton, but I would not agree to that, and the defendant went on out of the store and left the goods, and said he would come back and pay for them and get them. I soon left the store, and while I was gone the defendant came back into my store and took the goods off the counter and carried them off. He got some shoes and other things, amounting in all to $14 [described]. . . It is true that I charged the goods on my books to Alfred Evans, the defendant, after he carried them off, but I did it to keep a record of what amount he got. Alfred Evans has got some receipts that I gave him for money that he paid on these goods, and they will show the entire amount that he bought. The book on which the goods were originally entered has burned up. . . I took out a warrant for the defendant after he had paid me $3 on this account, and I did this because it looked like he was never going to pay for the goods he got."

The defendant, in his statement at the trial, said: "I went out to Norwood with a bale of cotton, and the gin was broke down. At the time I already had two bales of cotton at the gin besides this one, which had already been ginned. I went into Mr. Goldman's store and told that I wanted to get a few goods from him until I sold my cotton, and he let me have the goods and charged them to me in the amount of $14. Mr. Goldman wrapped them up and goes to his book and charged them to me, and said to me at the time, 'Evans, as soon as you sell your cotton you can pay me.' Here are the receipts that Mr. Goldman gave me for the payments that I made on this account: first payment, amount $3, dated 12/28/20; April 7, 1921, $8.75; July 7, 1921, $3. I did not steal them goods from Mr. Goldman, but I bought them from Mr. Goldman on a credit and paid him for them. Mr. Goldman got mad with me and thought I was trying to beat him out of the account. He had me arrested, and then got mad because I would not pay the court cost."

1. The alleged newly discovered evidence was that of R. A. Cason, as follows: "that J. L. Goldman, before he had a warrant sworn out against Alfred Evans, claiming that he had gotten some goods out of his store, stated to this deponent (R. A. Cason) that he sold the negro the goods and put them aside for the negro, Alfred Evans, to come back and get them; that J. L. Goldman told this deponent that if Alfred Evans did not pay him he would have him arrested; that the said Goldman further told this deponent that the negro Alfred Evans agreed to pay him for these goods when he sold his cotton, and that he (Goldman) did not know when Alfred Evans would sell his cotton."

2. In the ground of the motion for a new trial dealt with in the second paragraph of the decision it is contended that the failure of the court to direct the jury's attention specifically to the defense there mentioned practically withdrew this defense from their consideration.

Citations by counsel for plaintiff in error: 9 *Ga. App.* 227; 2 *Ga. App.* 704; 1 *Ga. App.* 535 (6).

*L. D. McGregor,* for plaintiff in error.

*M. L. Felts, solicitor-general,* contra.

BLOODWORTH, J., dissenting. I think that the analogy between this case and that of *Glaze* v. *State,* supra, is so striking that the principle announced in that case must control in this, and that the failure of the court to charge more specifically on the question of intent was such an error as requires the grant of a new trial.