BOSWELL MOUGHON, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. The opinion of a witness experienced in the use of guns, as to the length of time since a gun was fired off, is admissible evidence in connection with the facts on which it is founded.

2. That the shot found (next day after the shooting) in one barrel of the prisoner's gun, the other being empty, were compared with those which lodged in and about the person assaulted, and were like them, is admissible evidence.

3. That a person other than the prisoner has admitted that he did the shooting in question, is not admissible evidence.

4. It is sufficient that the facts connecting the prisoner with the offense be proved beyond a reasonable doubt, whether by positive or other testimony. It is not a rule of law that there must be no doubt about the facts.

5. Direct and circumstantial evidence are the same in effect when they equally convince the mind; and either kind of evidence is sufficient to establish a fact or to warrant a conclusion. But circumstances may point to a conclusion, and yet be too slight to justify its adoption.

6. The court need not further define circumstantial evidence than by reading to the jury section 3747 of the Code.

7. When an unfriendly interview with the prisoner is proper matter of evidence, his manner during the interview, and that it was unusual, may be proven as part of the *res gestæ*.

8. The circumstances of the prisoner's arrest illustrated no issue in the present case; and the testimony of the prosecutor that he had him arrested on suspicion, was not admissible.

9. A proposition which directs the jury to weigh the evidence with caution and deliberation, and not to infer guilt unless it is established beyond a reasonable doubt, is not the equivalent of a previous proposition which states the question to be, whether the circumstances in evidence are sufficient to satisfy the jury beyond a reasonable doubt that the prisoner committed the crime, not whether it is more probable that he committed it than any other person.

10. In giving to the jury as law what has been reduced to writing by counsel in a request to charge, it is not error for the court to add oral comments, where no request is made to give the whole charge in writing, and where the comments added are pertinent and correct.

Criminal law. Evidence. Charge of court. Before Judge WRIGHT. Dougherty Superior Court. April Term, 1876.

Moughon was placed upon trial for the offense of assault with intent to murder, alleged to have been committed upon

Moughon *vs.* The State of Georgia.

the person of one Hopkins Tillory, on August 10th, 1875. The defendant pleaded not guilty.

The evidence showed that Tillory was shot about eight o'clock at night, whilst lying upon the couch in the passage of his dwelling-house, by some unknown person; that he was struck by some fourteen squirrel shot.

The circumstances which pointed to the defendant as the perpetrator of the crime were, in brief, as follows:

1st. Four or five days before Tillory was shot he saw two negroes pick up a sack of cotton in his field, and run off with it; he fired at one of them and hit him. This person was ascertained to be the brother of the defendant. On the next day, at the gin-house, words passed between Tillory and the defendant in reference to the shooting of the latter's brother, and, according to the testimony of the former, threats were made against his life.

2d. The defendant, when arrested, made conflicting statements as to the whereabouts of his gun.

3d. One barrel of the gun, when found, at eleven o'clock, A. M., on the day after the shooting, appeared to have been recently fired—within the preceding twelve hours.

4th. The shot which lodged in the person of Tillory and in the banisters of his house, corresponded in size with those drawn from the loaded barrel of his gun.

The jury found the defendant guilty. He moved for a new trial upon the following grounds, to-wit:

1st. Because the verdict was contrary to law and evidence.

2d. Because the court erred in admitting the opinion of the witness, J. J. Bush, as to the time which had elapsed since the gun had been discharged, accompanied by the facts upon which he based such opinion, he having also stated that he had been familiar with the use of guns all his life.

3d. Because the court erred in admitting the testimony of James J. Mayo, to the effect that the shot drawn from the loaded barrel of the gun on the day after the shooting, corresponded in size with those found in the person of Tillory

and in the banisters of his house, the witness having compared them.

4th. Because the court erred in rejecting the testimony of Joe Smith, to the effect that one Frank Knighton had confessed the crime of shooting Tillory.

5th. Because the court erred in refusing to charge, "that in cases of circumstantial evidence, the facts proved to connect the prisoner with the crime, must all be proved by positive testimony; there must be no dispute about the facts."

6th. Because the court erred, when the jury returned and asked to be re-charged as to what circumstantial and positive evidence were, in instructing them as follows, to-wit: "In using the term positive evidence to you on yesterday, I should have used the term 'direct.' Direct and circumstantial evidence are the same, in effect, when they equally convince the mind. Circumstantial evidence, when the circumstances are proven which point to a certain conclusion, is as sufficient to establish a fact as direct evidence, and both kinds of evidence then become of a positive nature."

7th. Because the court erred in not telling the jury what circumstantial evidence was, except by reading section 3747, *et seq.*, of the Code.

8th. Because the court erred in this: after charging each of the three following requests of the defendant, in stating that it had already given this in charge, and now gave it again; and after reading the last of the three requests to the jury, in stating that they contained the same principle of law:

1st. "The question in this case is not whether it is more probable that the defendant committed this crime than any other person, but whether the circumstances given in evidence are sufficient to satisfy the jury, beyond a reasonable doubt, that the prisoner committed the crime?

2d. "It is the duty of the jury to weigh circumstantial evidence with caution and deliberation—to be careful not to draw any inference of the guilt of the defendant from the facts proven, unless such facts, taken and connected together, establish beyond a reasonable doubt the defendant's guilt.

3d. "If the jury, after examining all the evidence, have a reasonable doubt whether this crime was committed by the defendant, or by some other person, it is the duty of the jury to give the defendant the benefit of that doubt."

The court erred in making any comments whatever on said requests to charge, and also in making the particular comments it did, especially as it, after concluding its general charge, inquired of defendant's counsel if they still desired these requests to charge given, they replying in the affirmative.

9th. Because the court erred in allowing the witness, Hopkins Tillory, to state that he had the defendant arrested on suspicion.

10th. Because the court erred in allowing the solicitor general to ask said witness, what was the manner of defendant, and whether there was anything unusual in such manner, when he, witness, had the interviews with him at the gin-house and in the lane?

This witness had testified in relation to these interviews, as follows: Next morning, at the gin-house, defendant asked witness why in the hell did he kill his brother? Some words passed between them in the gin-house, and as witness went over to breakfast, defendant came out of the fence corner, about seventy-five yards from the gin-house, and rose up with a double barreled gun, and said "I'll be damned if I ain't going to kill you." Defendant walked on with witness about one hundred yards, when the latter turned off, and at the distance of about five yards defendant said, "I'll get you yet."

In response to the question objected to, the witness answered that defendant's manner was unnatural and indignant; that he appeared to be mad when at the gin-house, and he was in the same condition when in the lane.

The motion was overruled and the defendant excepted.

R. N. ELY; H. MORGAN, by D. H. POPE, for plaintiff in error.

B. B. BOWER, solicitor general, for the state.

BLECKLEY, Judge.

In trying a case depending upon circumstantial evidence, very few abstract principles should be given to the jury. Left to exercise their common-sense in their own way, the jury will generally determine correctly what is well proved, and what lacks further support. Furnished with a superfluity of rules, their attention is distracted, and the proffered help only obstructs. The better practice is, to decline charging refined speculations, and give only coarse, sharp-cut law. What shall come to the jury as evidence, is for the court. What it is worth when it arrives, is for the jury. They can discern its true value with spare assistance from the bench. The judge may well assume that they have a fair aptitude for their share of the common business.

A part of the charge complained of is, that "circumstantial evidence, when the circumstances are proven that point to a certain conclusion, is as sufficient to establish a fact as direct evidence, and both kinds of evidence then become of a positive nature." If the word *certain* is to be taken in the sense of definite or particular, to point, merely, is not sufficient, unless what is pointed at be favorable to the prisoner. Circumstances pointing to guilt must, in the aggregate, be irreconcilable with innocence, or they will be insufficient to warrant a conviction: 34 *Georgia Reports*, 345. If, however, the word *certain* was used in the sense of fixed, free from doubt, or free from reasonable doubt, and if the jury so understood it, there was no harm done. In either case, we are embarrassed, somewhat, by the closing member of the sentence, that "both kinds of evidence then become of a positive nature." We do not clearly comprehend how evidence without a positive nature ever acquires it; but whether it acquires it or not, may, for aught we know, be immaterial. We suppose that when it becomes strong enough to convince, its having a new nature or retaining the same old one, would not have any tendency to vary its effect. If, as the judge stated, he had already given the three propositions embodied in the request

to charge, that was a sufficient reason for disregarding the request. He was under no obligation to repeat. Had he simply declined to do so, he would have done right. But he gave all three of the propositions, and then told the jury that they contained the same principle of law—that is, that they meant, legally, the same thing. In this he was mistaken. The first and second propositions are clearly distinguishable; the one stating the question, and the other laying down a precept to be observed in solving it. Even the third is not identical in meaning with either of the others, for it is more restricted—it relates, solely, to the effect of reasonable doubt. As the main charge was oral, there would have been no error in adding oral comments, after giving the written request, if the added matter had been pertinent and correct. But to confound the three propositions, and treat them all as one, was incorrect. In thus defining them, the court's dictionary was at fault. It is for this error, chiefly, that we order a new trial.

Judgment reversed.