## 56375. SMITH v. THE STATE.

BANKE, Judge.

The appellant, a physician, was found guilty of multiple counts of possessing and dispensing biphetamine, an amphetamine, in violation of the Controlled Substances Act, Code Ann. § 79A-801 et seq. He was given eight concurrent 15-year sentences. He appeals the denial of his motion for new trial.

The appellant admitted writing eight prescriptions for the drug and having them filled personally at a

pharmacy. His defense was that he had prescribed the drugs as a licensed physician for use by patients with a legitimate medical need for them. There seems to be no dispute that this was in fact the use to which the drugs were put. The state's case was based on evidence that the Composite State Board of Medical Examiners had prohibited the appellant from prescribing amphetamines by limiting his practice to anesthesiology. The appellant contended that he had no knowledge of such a prohibition.

The evidence shows that the appellant was granted a license to practice medicine in Georgia on February 5, 1975. On April 9, 1975, he received a letter from the Composite State Board of Medical Examiners which read, in part, as follows: "This will confirm your licensure on February 5, 1975, by the Composite State Board of Medical Examiners based on reciprocity from Pennsylvania. . . This will also confirm the board's stipulation that your license permits the practice of medicine with the provision that you are to use no narcotics. It is the board's understanding that your work will be primarily as an anesthesiologist. If your situation changes, you should contact the board."

Two years later, on February 19, 1977, the appellant wrote to the board as follows: "This is to request that the anesthesia-only restriction be removed from my Georgia medical license files. It was my understanding that this limitation was to be in effect for a period of only six months from the granting of the Georgia license which dates from several years ago." The appellant explained in the letter that he needed the restriction removed in order to obtain staff privileges at two area hospitals. He enclosed a copy of his "DEA permit," a permit issued by the Federal Drug Enforcement Administration giving federal authority to prescribe controlled substances, and indicated that he had been writing prescriptions under it for many months. On February 23, 1977, the board wrote back to him informing him that the minutes of the board meeting at which his license was granted did not indicate that the "anesthesia only" restriction was limited to six months. He was *not* instructed either to cease treating patients or to cease prescribing drugs.

On March 3, 1977, the board again wrote the

appellant asking him to appear for a hearing "[w]ith reference to your restricted Georgia medical license and DEA registration." The letter further stated: "Please understand that no charges have been brought against you at this time, and that this hearing is merely investigational in nature, and that no subpoena is being issued to compel your appearance...You may appear with an attorney, or without an attorney, as you choose. You should be aware, however, that it is possible that this matter could ultimately result in charges against you *before the Composite Board of Medical Examiners."* (Emphasis supplied.)

The appellant continued to communicate with the board, complaining of his inability to get hospital privileges without the removal of the "anesthesia only" restriction. On April 28, 1977, the board wrote to inform him that his request for the removal of the restriction had been denied. This communication, like the others, contained no express prohibition against his continuing to prescribe drugs.

The prescriptions which the appellant was charged with writing were dated January 11, 1977; January 14, 1977; February 9, 1977; February 24, 1977; April 25, 1977; April 26, 1977; April 29, 1977; and May 5, 1977. The record is silent on whether the appellant had received the board's letter of April 28 prior to writing either the April 29 or the May 5 prescriptions, although the appellant did admit that he continued to write prescriptions after receiving the April 28th letter.

1. Although the evidence was certainly in conflict both as to whether the appellant's authority to prescribe drugs had actually been restricted and as to whether, if so, he had been notified of the restriction by the board, we hold that the jury was authorized to return a verdict of guilty. Both the executive director and the assistant executive director of the board testified that the board had restricted the appellant to the practice of anesthesiology, and the assistant executive director further testified that this meant that the appellant was not authorized to write prescriptions for amphetamines. This was sufficient to support a finding that the appellant lacked the authority to prescribe the drugs.

The appellant points out on appeal that even if the board did act to restrict his authority to prescribe drugs, there is no evidence that it complied with the Administrative Procedure Act in doing so. He therefore contends that the restriction must be considered invalid as a matter of law. This contention is without merit. Assuming arguendo that the board did fail to comply with the Act, the time for judicial review of its decision has long since passed. See Code Ann. § 3A-120 (b). Furthermore, the appellant admitted at trial that he had consented to and in fact requested the "anesthesiology only" restriction at the time his license was granted.

Evidence that biphetamine is a controlled substance was provided by the testimony of two licensed pharmacists who stated that biphetamine is a trade name for a type of amphetamine. Evidence that the appellant in fact received biphetamine from the pharmacy when he filled the prescriptions was adequately provided from the pharmacists' testimony that the drugs dispensed to him were taken from a bottle labeled "biphetamine" which had been received from the manufacturer as such. This evidence rendered unnecessary a chemical analysis. Accord, *Tompkins v. State,* 2 Ga. App. 639, 640 (58 SE 1111) (1907).

2. It was not error to admit into evidence the letters to the appellant from the board dated February 23, 1977, and April 28, 1977, referring to the "anesthesiology only" restriction. The appellant objected that these letters were not the highest and best evidence of the official action taken by the board in restricting his practice. However, the letters were introduced not as primary evidence that the restriction existed but to show that the appellant had been notified of the purported restriction. They were admissible for this purpose and were, in fact, the best evidence of such notification. In any event, the "best evidence" rule, Code § 38-203, applies only where the *contents* of a writing are in issue, not where the existence of a fact is the question at issue. *Sumners v. State,* 137 Ga. App. 493, 494 (224 SE2d 126) (1976), citing *Willingham v. State,* 134 Ga. App. 603, 606 (215 SE2d 521) (1975).

3. The appellant's sole defense at trial was his asserted good faith belief in his authority to prescribe the

drugs in question. This position was amply supported by the absence of any indication that the board ever communicated to him any express prohibition against prescribing drugs. The only stated restriction on his practice was the provision in the letter of April 9, 1975, that "you are to use no narcotic drugs." This could easily be interpreted as an injunction only against his own personal use of narcotics rather than as an injunction against his prescribing them for patients, and even if interpreted as the latter, it would not apply to amphetamines since amphetamines are not narcotic drugs. Under these circumstances, although the jury may have been entitled to believe otherwise, the evidence certainly authorized the inference that the appellant had acted on a mistake of fact as to whether or not the board had prohibited him from prescribing amphetamines. Although the appellant did not request a charge on this defense at trial, he now enumerates as error the court's failure to give one.

"It seems to have been uniformly held by the Supreme Court that the omission to submit the controlling issue in the case to the jury was such an error as demanded the grant of a new trial. And such issue must be submitted with such appropriate instructions as will not only call the attention of the jury to the existence of the issue, but the charge of the court must contain such clear, apt, and definite exposition of the specific principles of law applicable to the case as will enable the jury to deal with the real issue in the case and properly decide it. And this is true whether a specific request be made or not. Where there is only *one* defense on which a party relies, to fail to instruct the jury as to this defense so specifically that the jury will be not only required to pass upon it, but will be able to do so intelligently under pertinent rules of law and evidence, virtually withdraws that defense, and is, in effect, to direct a verdict." *Glaze v. State,* 2 Ga. App. 704, 708-709 (58 SE 1126) (1907) as cited in *Harris v. State,* 145 Ga. App. 675, 676 (244 SE2d 620) (1978). See also *Wittle v. State,* 50 Ga. App. 170 (177 SE 356)(1934); *McRoy v. State,* 131 Ga. App. 307 (3) (205 SE2d 445) (1974).

On the basis of the above authority, we hold that the trial court's failure to charge on the defense of mistake of

fact as it applied to the appellant's authority to prescribe amphetamines constitutes reversible error.

*Judgment reversed. Deen, P. J., and Smith, J., concur.*

ARGUED SEPTEMBER 12, 1978 — DECIDED OCTOBER 16, 1978.

*Lawrence S. Sorgen,* for appellant.
*V. D. Stockton, District Attorney, Michael H. Crawford, Assistant District Attorney,* for appellee.