68881, 68882. DINNAN v. THE STATE (two cases).
(325 SE2d 851)

BIRDSONG, Presiding Judge.

James Andrew Dinnan (hereinafter "Dr. Dinnan") was convicted of simple battery. His son James Walter Dinnan (hereinafter "Jim") was convicted of obstructing an officer. Each was sentenced to twelve

months probated, a $1,000 fine and to perform 250 hours of public service. Though each has filed a separate appeal (case no. 68881 involving Jim Dinnan and case no. 68882 involving Dr. Dinnan), we have consolidated the two appeals in this one opinion inasmuch as both appeals involve the same issues.

The facts giving rise to this case are convoluted. At the time of this offense, Dr. Dinnan was the co-owner of a shopping center. In this center was a restaurant owned by his son, Jim. A second son, Tom, together with one Sam Williamson, were engaged in renovating another store within the complex. On the night of the incident in question, the restaurant was in the process of closing for the night. Tom and his friend Sam could only be reached in the store which they were renovating by phoning to Jim's restaurant. At about 11:00 p.m., a phone call was received for Tom. While Tom and Sam were proceeding from the building being renovated to the restaurant, they overheard a tumult emanating from a car parked near the stores. They observed a young girl (Debbie) seeking to escape from a young man (Wendell). She broke away and started to run toward the men but Wendell recaptured her and was dragging her back towards the car. She broke away a second time and ran to Tom and Sam seeking sanctuary claiming that Wendell was "trying to kill her." She was hysterical, crying and her appearance was disheveled. Debbie was allowed to go into the restaurant and Sam and Tom ordered Wendell off the property in an effort to protect Debbie.

Wendell left in his car but shortly thereafter was seen by Sam and Tom to return. The evidence shows that Sam said something to the effect, "Well you had your chance to get away, now we're going to hold you for the police." The police were called. Sam held Wendell on the ground pending the arrival of the police.

Across the street from Dr. Dinnan's shopping center was another shopping area. Many of the youth of the community gathered routinely in this area. Apparently because of the disturbance caused by Sam holding Wendell on the ground, upward of 20 to 30 of the young people crossed the street apparently seeking to come to the aid of Wendell. The consequent uproar attracted the attention of the restaurant owner, Jim Dinnan. When he saw the approaching crowd, he returned to the restaurant and exited again with a large plastic stirrer, i.e., a stick.

At about this time a police officer (Wagner) responded to the call for police. He testified that as he arrived he observed a large crowd of young people (most of whom he knew by name), two men on the ground, one on top of the other; another man (Tom) standing close by, and a third man standing with a "stick" in his hand. As he alighted from his patrol car, one of the young people approached him and stated to Wagner that Wendell was being "killed" and to give

him help.

Though disputed, the evidence offered by the defense reflected that Wagner directly walked to where Sam was holding Wendell on the ground and without saying anything or asking any questions, struck Sam twice across the head with a night stick and pulled Sam forcibly from Wendell. Sam was arrested by Wagner for assault. When Wagner arrested Sam and allowed Wendell to depart, Tom Dinnan commenced to complain in heated, vehement and profane language that Wagner was arresting the wrong person; that Wendell was being held by them for the police because Wendell had assaulted Debbie and that all Sam was doing was trying to help the police. Because of his vehement protestations and profanity, Tom was arrested for using profane and abusive language. Both Sam and Tom were handcuffed and placed in the rear of a patrol car.

When Jim Dinnan observed the volatile potential of the situation, he had called his father, Dr. Dinnan, informing Dr. Dinnan of the gathering crowd and that his brother Tom had been arrested. Dr. and Mrs. Dinnan responded immediately by driving to the scene. When Dr. Dinnan arrived, he saw a large crowd of noisy youth, his son Jim standing at a patrol car with a police sergeant and another officer. He also observed another officer (Wagner) at a patrol car in which was an acquaintance (Sam) and his son Tom. Dr. Dinnan observed that blood was running down Sam's face from some injury on his head. Dr. Dinnan asked the sergeant what was happening. The sergeant responded he was not sure but in his understanding, Officer Wagner had tried to break up a fight between Sam and Wendell and had arrested Sam because Sam assaulted Wagner. Then when Tom continued to protest in profane and abusive language that Wagner was arresting the wrong person, Wagner arrested Tom for using profane and abusive language.

At that point in the sergeant's narrative, Jim interrupted and explained to his father, Dr. Dinnan, that Wendell had assaulted Debbie and in an effort to protect her from Wendell, they had put Wendell on the ground to hold him until the police arrived. When Wagner came, he struck Sam on the head with a night stick and arrested Sam, letting Wendell go.

Dr. Dinnan apparently observed to the sergeant that the only crime that he (Dr. Dinnan) could see as having occurred was the police brutality (aggravated assault) on Sam committed by Wagner and if anyone should be arrested, it should be Wagner. Though the evidence is not clear as to who made the statement, Dr. Dinnan was informed that Wagner was a police officer and could not be arrested. It is without dispute that at this point Dr. Dinnan stated "I'm going to arrest you as a citizen of the United States for brutality." As he made this statement, Dr. Dinnan either touched Wagner on the left wrist or

grasped Wagner by the shirt as he sought to make a citizen's arrest.

Wagner vigorously resisted this touching and pushed Dr. Dinnan backwards. As he fell against the police car, Dr. Dinnan was grasped by each arm by a police officer. According to defense testimony, Wagner lunged or jumped toward Dr. Dinnan and commenced striking Dr. Dinnan about the head with his fist. Jim Dinnan was standing next to his father and his testimony was that when he saw Wagner striking his father, Jim stepped between Wagner and Dr. Dinnan and raised his hands to ward off the blows in protection of his father. Wagner then diverted his attention to Jim Dinnan and effected Jim's arrest for interfering with Wagner's arrest of Dr. Dinnan upon a charge of making a battery upon Wagner.

At the conclusion of all the evidence, during the pre-charge conference, Dr. Dinnan and son Jim requested a charge on citizen's arrest and justification. Dr. Dinnan asserted as his sole defense to the simple battery that his admitted touching of Wagner was part and parcel of the attempted citizen's arrest and thus was lacking in criminal intent and justified. Jim Dinnan's defense was that his interjection between Wagner and Dr. Dinnan and the raising of his hands were to protect his father and in defense of an illegal assault and battery by Wagner upon Dr. Dinnan while resisting the citizen's arrest and was thus justified as the lawful defense of another. It is the refusal of the request to charge on the citizen's arrest and justification that formed the essential basis of each appeal. *Held:*

1. In substance the trial court concluded that Dr. Dinnan had not fulfilled all the requirements of the law so as to complete a citizen's arrest. The court also concluded that the alleged blows to Sam's head had occurred before Dr. Dinnan arrived and therefore the alleged act which was the basis for the citizen's arrest had not occurred in Dr. Dinnan's immediate presence. For both these reasons, the trial court refused to give a charge on either citizen's arrest or justification. Not only did the trial court refuse to charge on this issue, the court in fact charged the jury as follows: ". . . I charge you that a private person may only arrest an offender if the offense is committed in his presence or within his immediate knowledge. This . . . is relevant to both [Dr.] Dinnan and [Jim] Dinnan. If an offense is a felony, and an offender is escaping, or attempting to escape, a private person may arrest him upon reasonable and probable grounds of suspicion. The terms, *in his presence and within his immediate knowledge are synonymous in a crime committed in one's presence, only if*, by the exercise of any of his senses, he has knowledge of its commission, or by the accused admitting that such a crime is being, or has been committed. A private person may not act on hearsay or information furnished him by other persons. The authority to arrest is different and much broader for law enforcement officers. Furthermore, an arrest by a pri-

vate person — there is no evidence in this case that a private person's, or citizen's arrest has, in any way, been completed according to the strict requirements of law relating thereto. Therefore, any consideration thereof is specifically withdrawn from your consideration, and you are directed that there has been no such private arrest, or — by a private person, or a so-called citizen's arrest."

It is manifest that Dr. Dinnan and Jim Dinnan advanced as their sole defense the fact that Dr. Dinnan sought to arrest Wagner because of the assault upon Sam. Dr. Dinnan in substance offered a plea of confession and avoidance admitting the intentional touching of Wagner by Dr. Dinnan when he attempted to make the arrest, just as Jim admitted the intervention between Wagner and Dr. Dinnan in his effort to protect his father from Wagner's violent response to the attempted citizen's arrest.

Even assuming the trial court correctly concluded that all the statutory steps necessary to "complete" a citizen's arrest had not been fulfilled, we are not persuaded that a "completed" citizen's arrest is crucial inasmuch as this evidence did raise as an issue the state of mind of Dr. Dinnan at the time he admittedly touched officer Wagner, thus presenting an issue as to whether Dr. Dinnan acted with criminal intent in touching Wagner, i.e., an effort to harm him, or whether Dr. Dinnan acted in what he perceived to be a lawful manner, i.e., without criminal intent. Moreover, as viewed through the eyes of Dr. Dinnan, he observed a friend bleeding from the head (how profusely is not shown) and had received a report that this bleeding was unjustifiably caused by blows to the head by Officer Wagner. At least superficially this could give rise to a possible aggravated assault, a felony. In the charge of the court explaining to the jury why consideration of a citizen's arrest was withdrawn and would not be permitted, the court informed the jury that if an offense is a felony and an offender is attempting to escape a private person may effect an arrest upon reasonable and probable grounds of suspicion. There was evidence showing the possibility of an aggravated assault and the fact that Officer Wagner was attempting to leave the scene and a reasonable report from Jim that Wagner had struck Sam in the head.

It is the law of this state that where there is only one defense on which a party relies, failure to instruct the jury as to the evidence supporting this defense with sufficient clarity and specificity that the jury will not only be required to pass upon it, but do so intelligently, in practicality directs a verdict against the defendant, in that the effect of the failure to charge is to withdraw and deny the defense and to that extent prejudices a defendant's right to a fair and impartial trial. *Smith v. State,* 147 Ga. App. 549, 553 (3) (249 SE2d 353). See *Lavender v. State,* 234 Ga. 608 (216 SE2d 855).

Only slight evidence requires the giving of a charge even though

other evidence tends to show the nonexistence of the fact. *Heard v. State*, 149 Ga. App. 92, 93 (253 SE2d 454). See *Booker v. State*, 247 Ga. 74 (274 SE2d 334). It is not so much whether Dr. Dinnan made an informed and correct decision that a felony or a misdemeanor was involved but whether his state of mind was that he intended to make an arrest of an escaping offender or whether he in anger or otherwise intended to injure Officer Wagner. See *Johnson v. Jackson*, 140 Ga. App. 252, 257 (230 SE2d 756).

We conclude that the refusal by the trial court to present to the jury the sole defense offered by Dr. Dinnan and his son Jim was prejudicially erroneous and requires a reversal of each conviction.

2. While there are several enumerations raised by the appellants, our ruling herein either renders the other alleged errors moot or unlikely to occur in the event of retrial. However, there is one aspect of the court's charge raised by Dr. Dinnan that requires comment and further disposition. The State chose to charge Dr. Dinnan with simple battery utilizing language which essentially charged him with intentionally causing physical harm to Wagner and endangering his physical safety.

The crime of battery is proscribed in OCGA § 16-5-23 (a) (1), (2). OCGA § 16-5-23 (a) (1) proscribes the intentional contact of an insulting or provoking nature. This obviously contemplates a touching which does not result in injury but is insulting in character. OCGA § 16-5-23 (a) (2) proscribes the intentional causing of physical harm which goes beyond an insulting touching and prohibits the intentional inflicting of pain.

As we view the charge preferred against Dr. Dinnan, he was charged specifically with OCGA § 16-5-23 (a) (2). Moreover, the evidence patently showed a non-injurious touching. Nevertheless, the trial court, in its charge, informed the jury that it could convict Dr. Dinnan of simple battery if it found either that he had intentionally caused physical harm or that he intentionally made an offensive but unlawful touching. Inasmuch as Dr. Dinnan admitted a touching which clearly was without the consent of Officer Wagner, the jury could have supported its finding of guilty of the intentional causing of physical harm as charged by merely finding an insulting touching not involving pain. As was held in *Mize v. State*, 135 Ga. App. 561 (218 SE2d 450), physical contact which is of an insulting nature is a separate form of battery which must be specifically charged. Thus a charge that simple battery may be committed either by intentionally making physical contact of an insulting or provoking nature or by causing physical harm, while a true statement of the elements of battery, is not a true statement of facts or law under which Dr. Dinnan could be convicted in the face of the accusation as drawn. Under the charge the jury might well have found that the alleged victim was not

harmed but was justifiably offended and cast their verdict accordingly. Such an error further requires a reversal of the conviction as to Dr. Dinnan.

Judgments reversed. Banke, P. J., Sognier, Pope, and Benham, JJ., concur. McMurray, C. J., Deen, P. J., and Beasley, J., concur in the judgment only. Carley, J., concurs in part and dissents in part.

DECIDED DECEMBER 5, 1984 —
REHEARING DENIED DECEMBER 20, 1984.

John K. Larkins, Jr., for appellants.
Ken Stula, Solicitor, Kent Lawrence, Assistant Solicitor, for appellee.

CARLEY, Judge, concurring in part and dissenting in part.
I concur in Division 2 of the majority opinion and therefore agree that the conviction of Dr. Dinnan must be reversed for the reason set forth in that Division. However, I strongly disagree with the conclusions of the majority in Division 1 and firmly believe that the trial court committed no error in failing to submit to the jury the issue of justification based upon a citizen's arrest. The majority holds that "the refusal by the trial court to present to the jury the sole defense offered by Dr. Dinnan and his son Jim was prejudicially erroneous and requires a reversal of each conviction." However, there is no necessity of charging on a sole defense if it is not supported by the evidence. Although the majority purports to "pretermit" whether or not the trial court was correct in concluding that there was no evidence to show a "completed citizen's arrest," I believe that the trial court was clearly correct and that there was *no* evidence from which a jury could have found a lawful citizen's arrest. The real basis of the reversal is that the evidence raised an issue as to the state of mind of Dr. Dinnan at the time he attacked the officer, "thus presenting an issue as to whether Dr. Dinnan acted with criminal intent in touching Wagner . . ." (p. 195 of the majority opinion.) However, the overall charge of the trial court clearly, completely and correctly instructed the jury with regard to the necessity of criminal intent. Therefore, the only issue is whether or not the trial court should have allowed the jury the option of finding that Dr. Dinnan's claimed "intent" to effect a citizen's arrest was justification.

OCGA § 16-3-20 (4) provides that the defense of justification can be claimed: "When the person's conduct is reasonable *and* is performed in the course of making a *lawful* arrest." (Emphasis supplied.) Thus, a *lawful* arrest provides a justification defense to the arrester under OCGA § 16-3-20 (4), but an unlawful arrest subjects the arrester to potential liability for an "assault." *Coleman v. State*, 121

Ga. 594 (49 SE 716) (1904). The premise of this dissent and my disagreement with the majority is that, *as a matter of law*, there was no citizen's arrest. In this connection, the majority seems to concede that the citizen's arrest is an issue only insofar as appellants assert that that was what Dr. Dinnan intended rather than a battery. However, what appellants subjectively intended cannot create a legal arrest out of what was an illegal arrest as a matter of law. There is a very great difference between conduct which is justified under the law and conduct which is taken under a misapprehension of what the law would deem to be justified under the circumstances. It is clear that mistake of law is not a defense to criminal conduct.

The majority apparently seeks to equate appellants' citizen's arrest/justification defense with self-defense/justification. In my opinion, there is no valid analogy. Self-defense/justification is predicated upon the actor's reason to believe that physical force is necessary to defend himself. See OCGA § 16-3-21. Citizen's arrest/justification is predicated upon a *lawful* arrest, not a reasonable belief that an arrest is authorized. If a defendant in a criminal case is mistaken about the actual need to defend himself, but his fears in that regard are nonetheless reasonable, he is mistaken as to a *fact* and entitled to a charge on self-defense/justification. See *Ellison v. State*, 158 Ga. App. 419 (280 SE2d 371) (1981). However, in the instant case, appellant is mistaken as to the law. This mistake constitutes no defense to a criminal charge. While the law recognizes that it is possible to be mistaken as to whether such facts exist as would create a situation in which the law would justify conduct, the law does not recognize that it is possible to be mistaken as to what conduct the law would deem to be justified under the circumstances.

For all of these reasons, it is my opinion that the record shows clearly that, as a matter of law, there was no completed citizen's arrest and, therefore, the trial court's charge in this connection was correct. I respectfully dissent to Division 1 of the majority opinion.