77533. AGAN et al. v. THE STATE.
(380 SE2d 757)

SOGNIER, Judge.

Ramsey Agan and Rauf Sarper appeal from their convictions of bribery of public officials in violation of OCGA § 16-10-2 (a) (1).

1. We first address appellants' enumeration on the general grounds.

(a) As to appellant Agan, the evidence adduced at trial disclosed that Agan, the Honorary Turkish Consul in Atlanta, owned a five acre parcel of land in DeKalb County on which he operated several small businesses. There was evidence that Agan wanted to construct a hotel on the property, in which he intended to provide meeting space for

the local Turkish-American association of which he was an official, and that he, along with appellant Sarper, an Emory University professor, had held discussions with officials of the Emory Medical Clinic about bringing to the clinic Turkish patients who would stay at the planned hotel. After the DeKalb County Commission twice rejected his applications for a building height variance, Agan submitted a third variance application, then contacted Commissioners Robert Lanier and John Fletcher, inquiring of each official what he (Agan) could do to obtain approval of his application. Fletcher testified that after he met with Agan in May 1987 to discuss technical aspects of the hotel project, Agan attended the Commission's June 9 meeting, and approached Fletcher in the hallway to ask for his support if the variance application came up for a vote. Fletcher testified Agan also stated he had a number of friends in the local Turkish-American association who wanted to contribute to Fletcher's campaign, but Fletcher discouraged the idea because he was not currently campaigning for reelection. This encounter with Agan left Fletcher so "very concerned" that he contacted law enforcement officials about it.

Ten days after the commission meeting, Agan and Fletcher met again, and after pressing Fletcher for his support for the variance application, Agan presented Fletcher with four checks totalling $3,700 made out to Fletcher personally and marked "for campaign contribution." The checks were drawn on the accounts of appellant Sarper and three other individuals, each of whom testified they wrote the checks, for which they were reimbursed by Agan, under the impression that Agan wanted the contributions to come from different people to give the appearance Agan enjoyed broad support in the Turkish community. Only two of the four, Sarper and one other, were aware of Agan's proposed hotel, and both testified that they knew nothing about the variance application. None of the four knew Fletcher. Fletcher testified that Agan left the four checks on the desk over Fletcher's protests that he did not even have a campaign bank account. Thereafter, at a July 6th meeting between Agan and Fletcher during which Agan reiterated his need for the variance to ensure the economic viability of the hotel project and Fletcher indicated he remained undecided about his vote on the matter, Agan presented Fletcher with a fifth check for $800 from a third party, likewise marked as a campaign contribution. The meeting, which was videotaped by investigators from the DeKalb County District Attorney's office, showed that in response to Fletcher's inquiry as to what Agan wanted from him, Agan stated, "I need your support," but also said "I'm not asking for anything except I'll assure you, the way I feel, you will be doing service to the county because where's the tax base; and the proposed use for it will be . . . enhancing."

Also videotaped was Agan's meeting with Commissioner Robert

Lanier on July 21, 1987, during which Agan discussed his need for a variance in order to attract a major hotel franchisor, his expected arrangements with Emory for patient referrals, and the objections raised by the other commissioners. Sarper attended this meeting, and as they were leaving Lanier's officer Sarper handed Agan an envelope at Agan's request, and Agan and Lanier then walked back into Lanier's office where Agan presented Lanier with the envelope which contained Sarper's check to Lanier for $3,000 marked "campaign contribution." When Lanier informed Agan that he was not up for reelection for three years, Agan inquired whether Lanier "could build it up." Lanier asked Agan what he wanted for this contribution, and Agan responded, "Nothing. Not a thing. That's one thing I want to make clear, nothing because I appreciate what you have do[n]e for me so far previously; and anything else I can do for you and I will . . . be glad to do that."

Other evidence was adduced that Agan's proposed arrangement with Emory involved Agan bringing Turkish patients to Emory with a guaranteed payment of their bills in exchange for which Emory would discount the fees charged and pay some or all of the differential to Agan.

We are convinced, after a careful review of the evidence adduced at trial, including the videotapes of the meetings with Lanier and Fletcher, that under the standard established in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), a rational trier of fact could have found the essential elements of the crime of bribery to have been established beyond a reasonable doubt in regard to Agan. Although the evidence was in conflict, resolution thereof is for the jury. *Page v. State*, 159 Ga. App. 344, 348 (283 SE2d 310) (1981). Bribery is a specific intent crime, requiring proof that the defendant offered money or valuables to a government official "with the purpose [or intent] of influencing him in the performance" of an official act as an essential element of the crime. OCGA § 16-10-2 (a) (1). While proof that a defendant made a campaign contribution to an elected official, even one in a position to cast a vote favorable to the defendant, is not sufficient to show a violation of OCGA § 16-10-2 because the official is "entitled" to receive such contributions, see Division 3, infra, in this case the evidence was sufficient to authorize the jury to conclude that Agan made the payments in an effort to induce a vote in favor of his variance application. See OCGA § 16-2-6; see generally *Parham v. State*, 166 Ga. App. 855, 856 (1) (305 SE2d 599) (1983).

The indictment charged Agan with giving payments to Lanier and Fletcher for the purpose of influencing their "vote on an application for a building height variance." Construed to uphold the verdict, the evidence disclosed that Agan considered obtaining the variance essential to his ability to achieve a sufficient return on his investment

in the property, that he sought the commissioners' support specifically for that issue at the time he made the payments, and that he continued to present checks to Fletcher notwithstanding the latter's protests that he was not actively campaigning. Combined with Agan's concealment of the true source of the funds—himself—this evidence reasonably could have been considered by the jury as proof of a specific intent to bribe public officials. Further, although Agan's variance application was not on the Commission's agenda at the time he proffered the checks to Lanier and Fletcher, there was testimony that the matter could be brought up at any time either by the development board or a commissioner, and Agan told Lanier that another commissioner had agreed to place the application on the agenda once Agan had obtained enough commitments to ensure a favorable vote. Moreover, contrary to Agan's contentions in his brief, evidence of agreement by the official to whom payments are made to accept the money and act as requested is not essential to proof of intent to bribe the official. See *Page*, supra at 347-348. Accordingly, we find no error in the trial court's denial of his motion for directed verdict of acquittal. See generally *Patterson v. State*, 161 Ga. App. 85-86 (4) (289 SE2d 270) (1982).

(b) The evidence adduced as to appellant Sarper, a professor of radiology at Emory and the VA Hospital, reveals that he participated with Agan in the proposal to bring Turkish patients to Emory,. although the evidence clearly shows that Sarper was not to receive any remuneration for this plan, but instead hoped to enhance his status at Emory. While he had no financial interest in the property for which Agan was seeking the variance, there was some evidence, albeit disputed, that one of the businesses operating on the property in which Sarper owned a minority interest was to be relocated in the proposed hotel. Sarper's only direct contacts with Fletcher were two brief phone calls in which he encouraged the commissioner to support the hotel project. At the videotaped meeting between Agan and Lanier, Sarper did not join in the conversation except to state that he was present as a representative of the local Turkish-American association to indicate the Turkish community's support for Agan's project and to encourage Lanier to support it. Further, Sarper remained in the waiting area while Agan presented a check to Lanier. Sarper testified that he was unaware Agan had applied for a building height variance, that he wrote the checks to Lanier and Fletcher and obtained checks from two others at Agan's request because of Agan's desire to demonstrate his political and fund-raising clout to local politicians, and that he (Sarper) assumed the contributions were part of an effort by the national Turkish-American association to encourage lobbying at the local level.

We find the evidence insufficient to authorize a reasonable trier

of fact to find the essential elements of the crime of bribery of a public official to have been established beyond a reasonable doubt as to Sarper. As discussed in section (a) of this Division, specific intent must be proved because making of a campaign contribution in an effort to influence an elected official is not sufficient proof of bribery of that official in and of itself. Sarper's presence at the meeting between Agan and Lanier was not sufficient to prove Sarper was a party to the charged bribery. See *Brown v. State,* 250 Ga. 862, 864-865 (1) (302 SE2d 347) (1983). Since intent cannot be presumed, OCGA § 16-2-6, and the circumstantial evidence presented at trial failed to exclude every other reasonable hypothesis, OCGA § 24-4-6; see *Brown,* supra at 864-865 (1), in the absence of evidence sufficient as a matter of law to establish the specific intent required by the statute and charged in the indictment, see generally *Bowman v. State,* 258 Ga. 829 (376 SE2d 187) (1989), the trial court erred by denying Sarper's motion for directed verdict of acquittal. See generally *Brown,* supra at 864-865 (1).

2. The contention made on appeal that OCGA § 16-10-2 (a) is unconstitutionally vague is meritless. *King v. State,* 246 Ga. 386, 387-388 (2) (271 SE2d 630) (1980).

3. We find that the trial court's charge on the definition of "entitled" under OCGA § 16-10-2 (a) as well as the court's failure to give either requested charges regarding the Ethics in Government Act, OCGA § 21-5-1 et seq., or an adequate substitute embodying the sole defense raised below, i.e., that the payments were campaign contributions made as part of a lobbying effort by Agan and the local Turkish-American association rather than as bribes, constituted reversible error.

The trial court charged the jury on the definition of the offense of bribery as set forth in OCGA § 16-10-2 (a) (1), which provides that "[a] person commits the offense of bribery when . . . [h]e gives or offers to give to any person acting for or on behalf of the state or any political subdivision thereof . . . any benefit, reward, or consideration *to which he is not entitled* with the purpose of influencing him in the performance of any act related to the functions of his office." (Emphasis supplied.) The trial judge then stated to the jury that "the word 'entitled' does not have any specific or extraordinary or particular legal terminology or definition. I will charge you the word 'entitled' means to give a deed or title to." With regard to the Ethics in Government Act, the court charged as follows: "A campaign contribution means a gift, an advance or deposit of money or anything of value, conveyed or transferred, for the purposes of influencing the nomination for election or election of any person for office. . . . [A] campaign contribution, as I have just defined for you, can be made directly to the candidate. . . . [U]nder Georgia Law campaign contri-

butions can be made for use in future campaigns for elective office. . . . [I]t is not the use to which the money may be put, but it is the purpose for which the money was paid that controls."

"[I]t is an elementary rule of statutory construction that, absent clear evidence to the contrary, words should be assigned their ordinary, logical, and common meaning. [Cits.]" *Curlee v. Mock Enterprises*, 173 Ga. App. 594, 600 (327 SE2d 736) (1985); see OCGA § 1-3-1 (b). In determining the ordinary signification of a word, in addition to considering dictionary or treatise definitions, courts must consider "the intention with which [the term] is used as manifested by the context and considered with reference to the subject-matter to which it relates. [Cit.]" *Thomas v. MacNeill*, 200 Ga. 418, 424 (37 SE2d 705) (1946).

Although we recognize that one of the definitions given to "entitle" is substantially the same as that charged by the trial court, see Black's Law Dictionary, that same source also defines "entitle" as "[t]o qualify for; to furnish with proper grounds for seeking or claiming." "Entitle" or "entitled" also has been defined as connoting "the granting of a privilege or right . . .; to give the right to demand or receive; . . . to furnish with grounds for claiming . . .; to furnish with grounds for seeking," 30 CJS Entitle 720-721, and as " 'qualified.' " *Davis v. City Council*, 90 Ga. 817, 820 (17 SE 110) (1893). We construe the clear intendment of OCGA § 16-10-2 (a) as proscribing the giving or offering to a government official, with the intention of influencing the official in the performance of his duties, any benefit, reward, or consideration which he is not qualified or privileged to receive or has no grounds or right to seek, request, or receive.

Further, as OCGA § 16-10-2 (a) addresses the receipt of items of value by elected officials, we agree with appellants that it should be read in conjunction with the Ethics in Government Act, which defines political contributions and sets forth the manner in which contributions may be received and reported. See generally *Thomas*, supra at 424. The Act defines campaign contributions as, inter alia, an "advance or deposit of money or anything of value conveyed or transferred for the purpose of influencing the nomination for election or election of any person for office, . . . [and] other forms of payment made to candidates for office or who hold office when such fees and compensation made can be reasonably construed as a campaign contribution designed to encourage or influence a candidate or public officer holding elective office." OCGA § 21-5-3 (6). Such contributions may be made "directly to a candidate or such candidate's campaign committee." OCGA § 21-5-30 (a). Accordingly, a campaign contribution, whether made to a candidate in the heat of a campaign or to encourage or influence the official after he is elected, is something which a candidate or elected official is qualified or privileged to re-

quest or receive and thus is something to which he is "entitled" within the meaning of OCGA § 16-10-2. Consequently, we hold that the trial court's definition of "entitled," while not wholly incorrect, was incomplete and misleading in the context of this case and could have misled the jury to appellants' prejudice. See generally *New v. State*, 171 Ga. App. 392-393 (5) (319 SE2d 542) (1984).

Similarly, the trial court's failure to give request to charge 4, which included a portion of the definition of "contribution" found in OCGA § 21-5-3 (6), as part of the charge concerning the Ethics in Government Act, or to give requests to charge 2, 3, and 8, after adjusting them to the facts of the case, was error, as those charge requests embodied appellants' sole defense. "It is the law of this state that where there is only one defense on which a party relies, failure to instruct the jury as to the evidence supporting this defense with sufficient clarity and specificity that the jury will not only be required to pass upon it, but do so intelligently, in practicality directs a verdict against the defendant, in that the effect of the failure to charge is to withdraw and deny the defense and to that extent prejudices a defendant's right to a fair and impartial trial. [Cits.]" *Dinnan v. State*, 173 Ga. App. 191, 195 (325 SE2d 851) (1984). Given the evidence adduced during trial and the scope of appellants' charge requests, read as a whole the court's charge to the jury failed to inform them fully as to an essential element of the alleged crime or to explain appellants' defense and the evidence supporting it with sufficient clarity. Failure to so charge constitutes reversible error. See generally *Dinnan*, supra at 194-196 (1); *New*, supra at 392-393 (5).

4. It is also contended that the trial court erroneously permitted the admission into evidence of $7,500 in cash obtained when Lanier and Fletcher, at the direction of the district attorney, cashed the checks Agan had given them. The record reveals that as each payment to a commissioner was discussed by a witness, first the check was admitted into evidence, and then the State submitted the cash received by the witness upon cashing the check. The currency was displayed to the jury and used by the district attorney during closing argument. Although the State contends this enumeration has been waived because of the failure to interpose timely objection, we will address it because the same issue is likely to arise at retrial.

We find no merit in the State's argument that the currency was relevant to prove the commissioners had received something of value, as "[a] check, executed and delivered, is a contract in writing by which the drawer contracts with the payee that the bank will pay to the payee therein the amount designated on presentation [cits.]," *Bailey v. Polote*, 152 Ga. App. 255, 256 (1) (262 SE2d 551) (1979), and thus constitutes "consideration" within the meaning of OCGA § 16-10-2. See *Whitfield v. State*, 159 Ga. App. 398, 400 (5) (283 SE2d 627)

(1981). To the extent that there was any question as to whether the checks would be honored upon presentation, that fact could have been established either by testimony from bank officials or by testimony by Lanier and Fletcher that they were able to cash the checks. Further, we agree that admission of the currency into evidence and the manner in which it was displayed to the jury were highly prejudicial and inflammatory, and thus find its admission was error. See generally *Tuggle v. State*, 149 Ga. App. 634, 635 (3) (255 SE2d 104) (1979).

5. The trial court ruled that appellants were not entitled to a hearing on their motion to dismiss for selective prosecution. In support of this motion, appellants presented evidence that dozens of other real estate developers had made campaign contributions to county commissioners, including Fletcher and Lanier, while zoning matters concerning the developers' properties were under consideration by the commission, and also presented affidavit testimony that the county commission chairman had used a derogatory ethnic term in referring to Agan after a debate on a variance application filed by Agan. The trial court held that appellants were not entitled to a hearing on their asserted defense of selective prosecution because they had failed to establish a prima facie case.

"In order to prevail in a selective prosecution defense, a defendant must meet the heavy burden of (1) making a *prima facie* showing that he has been singled out for prosecution although other similarly situated persons who have committed the same acts have not been prosecuted; and (2) demonstrate that the government's selective prosecution was unconstitutional because actuated by impermissible motives such as racial or religious discrimination. [Cit.]" *United States v. Silien*, 825 F2d 320, 322 (11th Cir. 1987); see *Sabel v. State*, 250 Ga. 640, 643 (4) (300 SE2d 663) (1983), overruled in part on other grounds, *Massey v. Meadows*, 253 Ga. 389, 390 (321 SE2d 703) (1984). However, although a defendant must satisfy this two-prong test to sustain a defense of selective prosecution, to be entitled to an evidentiary hearing on a selective prosecution claim a defendant need only present evidence sufficient to establish a " 'colorable entitlement' " for the claim, or "sufficient facts 'to take the question past the frivolous state and [raise] a reasonable doubt as to the prosecutor's purpose.' [Cit.]" *United States v. Gordon*, 817 F2d 1538, 1540 (1) (11th Cir. 1987).

After reviewing the record and the transcript of the pretrial hearing held in this case, we have concluded that the trial court, by ruling that appellants were not entitled to a hearing because they had not established a prima facie case, applied the wrong standard when determining whether appellants were entitled to a hearing on their selective prosecution claim. Although the issue is now moot as to

Sarper, we have ruled that Agan is entitled to a new trial on other grounds. Accordingly, if upon retrial he renews his motion to dismiss for selective prosecution, in deciding whether to grant an evidentiary hearing the trial court is to consider only whether Agan has demonstrated a "colorable entitlement" to a selective prosecution defense, not whether he has presented a prima facie case. If Agan presents evidence sufficient to raise a "reasonable doubt" as to the constitutionality of his prosecution, see *Gordon*, supra at 1540 (1, 2), he will be entitled to an evidentiary hearing so that the full facts may be developed. See id.

6. Our decision in Division 1 (b), supra, makes consideration of appellant Sarper's remaining enumeration unnecessary.

*Judgments reversed. Carley, C. J., Banke, P. J., Birdsong and Benham, JJ., concur. Pope, J., concurs in Divisions 1, 2, 3, 5, and 6, and in the judgment. Deen, P. J., McMurray, P. J., and Beasley, J., dissent.*

DEEN, Presiding Judge, dissenting.

I must respectfully dissent from the majority opinion, because I believe that no reversible error occurred below and that both convictions should be affirmed.

1. The majority opinion errs in concluding that the evidence was insufficient to support Sarper's conviction. Initially, I note that in his brief, Sarper's argument on this issue consists solely of his adoption of Agan's argument on the sufficiency of the evidence. As Agan's argument is silent as to the sufficiency of the evidence to convict Sarper, pursuant to Rule 15 (c) of our court, Sarper has abandoned any enumeration of error regarding this point. Nevertheless, even considering the merits of this contention, sufficient evidence authorized a rational trier of fact to find Sarper guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The majority opinion reaches the opposite conclusion seemingly by accepting Sarper's testimony at face value. However, plenty of circumstances shown during the trial provided sufficient basis for the jury to make an opposite finding as to Sarper's credibility. For example, the jury could have found patently incredible Sarper's testimony that he sat through the meeting between Agan and Lanier as they discussed the variance at length and yet had no idea what they were talking about. When asked on cross-examination about the purposes of making political contributions to the commissioners, Sarper answered, "I presume that when you make political contributions to politicians, they do something to expedite the process. Everybody knows that." Sarper further replied, when asked if he knew that a politician will help you if you contribute to his campaign, "I have previously experienced it . . ." From these statements and circumstances, the

jury could have rejected Sarper's claim of innocence and found instead a corrupt intent. "If something looks like [a bribe], sounds like [a bribe], and acts like [a bribe], it probably is [a bribe], regardless of whether or not one uses the magic word itself." *State v. Hughes*, 189 Ga. App. 671, 676 (377 SE2d 192) (1988). (Deen, P. J., dissenting.)

"Left to exercise their common-sense in their own way, the jury will generally determine correctly what is well proved and what lacks further support . . . What shall come to the jury as evidence, is for the court. What it is worth when it arrives, is for the jury . . . The judge may well assume that they have a fair aptitude for their share of the common business." *Moughon v. State*, 57 Ga. 102, 106-107 (1876).

2. The trial court's jury charge on the definition of "entitled" under OCGA § 16-10-2 (a) was incomplete and somewhat confusing. Even the State concedes that. However, I cannot agree with the majority opinion that this minor confusion misled the jury. The jury charge informed the jury of the essential elements of the offense of bribery, and the evidence certainly proved those elements. Under these circumstances, the incomplete definition of "entitled" was inconsequential and harmless error.

I also cannot agree with the majority opinion's conclusion that the trial court erred in refusing to give the appellants' requested jury charges on the law and definition of campaign contributions. Comparison of the requested jury charges to the jury charge given by the trial court shows that the trial court did adequately inform the jury on that subject matter. Failure to give requested charges in the exact language requested where the charge given substantially covers the same principles, is not grounds for reversal. *Woods v. State*, 187 Ga. App. 105 (369 SE2d 353) (1988).

3. The majority opinion is in error in concluding that the admission of cash, obtained when the commissioners presented the checks given to them by the appellants, was highly prejudicial and inflammatory and reversible error. The proper resolution of this enumeration of error simply is that the appellants waived any objection at trial. The cash from the $3,000 check was specifically admitted without objection by counsel for both Agan and Sarper. When the cash from the $3,370 worth of checks was tendered, Sarper's attorney stated that he had no objection, and counsel for Agan stated that he had his objection on the record, when there was, in fact, no objection on record. Only when the $800 cash from the check written by Mohammed Hassan to one of the commissioners was tendered, was there an objection. Counsel for Agan stated that he had the same objection, and counsel for Sarper merely objected on the grounds of relevance. Noting that there had been no objections before, the trial court admitted the cash into evidence. Under these circumstances, the appel-

lants' waiver of any objection is clear. Even if the only objection to this evidence were considered, the district attorney's explanation that the cash was offered to show that the checks were good, was a sufficient showing of relevance.

4. Assuming, arguendo, that, as advised by the majority opinion, the appellants would be entitled to an evidentiary hearing on their selective prosecution defense upon their showing a "colorable entitlement" to that defense, it is clear that the appellants failed in this regard. In support of their motion to dismiss for selective prosecution, the appellants submitted some evidence that other real estate developers had made some campaign contributions to county commissioners while zoning matters concerning the developers' properties were under consideration by the commission, and an affidavit in which a person recalled the county's chief executive officer's reference to Agan as a "g.. d.. sand nigger."

As noted by the majority opinion, "[i]n order to prevail in a selective prosecution defense, a defendant must meet the heavy burden of (1) making a *prima facie* showing that he has been singled out for prosecution although other similarly situated persons who have committed the same acts have not been prosecuted; and (2) demonstrate that the government's selective prosecution was unconstitutional because actuated by impermissible motives such as racial or religious discrimination. [Cit.]" *United States v. Silien*, 825 F2d 320, 322 (11th Cir. 1987). In the instant case, the appellants made no showing whatever of similarity between the other developers and themselves. Considering the fact that the county's chief executive officer does not vote on zoning matters and does not even attend zoning meetings, and that it was the district attorney, and not the chief executive officer, who decided to prosecute the appellants for bribery, any derogatory ethnic remark attributable to the chief executive officer is irrelevant. The appellants thus made no showing of "colorable entitlement" to the defense, and the trial court properly denied both the request for an evidentiary hearing and the motion to dismiss.

5. Although the majority opinion does not address the issue because of its conclusion that the evidence did not support Sarper's conviction, I note also that the trial court did not abuse its discretion in denying Sarper's motion to sever. *Rivers v. State*, 178 Ga. App. 310 (342 SE2d 781) (1986).

I am authorized to state that Judge Beasley joins in this dissent.

DECIDED MARCH 16, 1989 —
REHEARING DENIED MARCH 29, 1989 —

*Cook & Palmour, Bobby Lee Cook, Meals, Kirwan, Goger, Winter & Parks, P. Bruce Kirwan, Jake Arbes*, for appellants.

*Robert E. Wilson, District Attorney, Barbara B. Conroy, R. Stephen Roberts, Assistant District Attorneys*, for appellee.